Maben v. Rosser *et al.*

No. 808.   Opinion Filed July 28, 1909.

(103 Pac. 674.)

1.  **JUDGES—Impeachment—District Judges not Subject.**  Judges of
    the district courts are not subject to impeachment under section
    1 of article 8 (section 199, Bunn's Ed.) of the Constitution.

2.  **OFFICERS—Removal of State Officers—Proceedings.**  All state
    officers elected by the people or appointed by the Governor, whose
    removal has not otherwise been provided for by the Constitu-
    tion, or exclusive provision been made therefor by statute enact-
    ed since the admission of the state, may be removed under the
    provisions of article 4, c. 68, Wilson's Rev. & Ann. St. 1903.

3.  **JUDGES—Proceedings to Remove—Nature.**  A proceeding under
    the provisions of article 4, c. 68, Wilson's Rev. & Ann. St. 1903.
    for the removal of a district judge, is not a criminal proceeding,
    but is a special proceeding.

4.  **JUDGES—Proceedings to Remove—Suspension.**  Pending a final
    hearing of a proceeding under such statute to remove a district
    judge, the court in which such cause is pending may suspend the
    accused from the exercise of the functions of his office.

5.  **WORD AND PHRASES—"Including."**  The word "including"
    is the participle from the verb "include," which by Web-
    ster's Dictionary is defined in its primary sense to mean to con-
    fine within, to hold, to contain, to shut up, to inclose; by the
    Century Dictionary, to comprise as a part.  The word has also
    been defined as having an accumulative sense and as classing that
    which follows with that which has gone before.

(Syllabus by the court.)

Original application by William B. Maben for a writ of
prohibition to be directed to Malcolm E. Rosser, Acting Judge
of the Tenth Judicial District, Charles West, Attorney General
of the State, and Fred S. Caldwell, Counsel to the Governor.
Writ denied.

This is an original action brought in this court by William
B. Maben, as plaintiff, against Malcolm E. Rosser, acting judge
of the Tenth judicial district, Charles West, Attorney General
of the state, and Fred S. Caldwell, counsel to the Governor.

Plaintiff by his petition seeks to obtain a writ of prohibition, prohibiting and restraining the defendants from proceeding in the prosecution of a certain action pending in the district court of Pottawatomie county. The facts alleged in the petition, in so far as they are necessary to the consideration of this case, may be epitomized as follows: On the 26th day of April, 1909, the grand jury of Pottawatomie county returned an accusation against plaintiff, charging him with misconduct in the office of judge of the Tenth judicial district, and praying that he be removed therefrom for such misconduct. Thereafter the Attorney General made application to defendant Malcolm E. Rosser, acting judge of the Tenth judicial district, for an order suspending plaintiff until the final hearing upon the accusation returned by the grand jury. Plaintiff appeared and filed his demurrer to the accusation returned by the grand jury and to the application for suspension, upon the ground that the court was without jurisdiction to hear and determine a proceeding to remove a judge of the district court. The demurrer was overruled by the court, and the defendant Judge Rosser was about to enter an order suspending plaintiff; but, before doing so, he gave to the plaintiff an opportunity to present his petition to this court for a writ of prohibition.

*T. G. Cutlip, E. A. Foster,* and *W. S. Pendleton,* for plaintiff.

*Charles West,* Atty. Gen., and *Fred S. Caldwell (B. B. Blakeney,* of counsel), for defendants.

HAYES, J. (after stating the facts as above). Counsel for defendants correctly state in their brief that this case presents the following three questions: First. Is a judge of a district court subject to impeachment under the provisions of the Constitution of the state? Second. If a judge of a district court is not impeachable, can he, under the laws of the state, be removed from office in a proceeding instituted by accusation in the district court of the county where such officer resides?

Third. If a district court has jurisdiction to hear, try, and determine an accusation to remove a judge of the district court, can he, pending a final determination of such accusation, enter an order suspending the accused from the functions of his office? We shall consider these questions in the order mentioned.

1. Section 1, art. 8, of the Constitution (section 199, Bunn's Ed.) provides:

"The Governor and other elective state officers, including the justices of the Supreme Court, shall be liable and subject to impeachment for willful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office."

Plaintiff contends that, by virtue of this section, all state officers, regardless of class, kind, or department to which they belong, who are elected, are subject to removal by impeachment for the causes enumerated therein. If this contention of plaintiff be correct, district judges are subject to impeachment for corruption in office, which is the charge made against him as a ground for his removal. Under this construction of the section, for which plaintiff contends, members of the House of Representatives and of the Senate would also be subject to impeachment; but section 30, art. 5 (section 101, Bunn's Ed.), in part provides:

"Each House may determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of two-thirds, expel a member."

And section 19, art. 5 (section 89, Bunn's Ed.) of the Constitution in part provides:

"A member of the Legislature expelled for corruption shall not thereafter be eligible to membership in either House. Punishment for contempt or disorderly conduct, or for any other cause, shall not bar an indictment for the same offense."

These sections of the Constitution provide a mode for the removal of members of the Legislature entirely different from the mode prescribed by section 1, art. 8, *supra,* for the removal of officers therein designated. A member of the House of Rep-

resentatives, under section 19, is charged and tried by the House of which he is a member, and a member of the Senate is charged and tried by the Senate; but under article 8 of the Constitution, providing for removal by impeachment, charges are preferred by the House of Representatives, and the trial and removal, if conviction is had, are by the Senate. If plaintiff's construction of section 1, art. 8, is correct, then it is in ·conflict with section 30, art. 5, *supra*. These sections are ·equally mandatory, and are parts of the same instrument, proposed by the same framers, and adopted by the people at the same time, and should be construed so as to permit both to stand and give force and effect to each, if they are susceptible of such construction. The intention of the framers of the Constitution and the people in adopting it, by the use. of the general terms "other elective state officers," is to be ascertained by reading this expression in connection with the context and as limited by the words with which they are . associated. The rule and doctrine of *ejusdem generis* furnishes us, we think, an aid for the construction of these terms and a means of arriving at the legislative intent. This familiar rule of construction has been well stated in the syllabus to *Nichols v. State,* 127 Ind. 406, 26 N. E. 839, in the following language:

"The rule is that where words of a particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general words are to be construed as applicable to persons or things, or cases, of like kind to those designated by the particular words."

It is true that this rule of construction must yield to that other and always superior canon of construction which declares that, in construing a statute the primary object shall be the intention of the lawmakers, and, when any rule of construction defeats that intention, it must be abandoned. Rules of construction are but aids to the accomplishment of this primary object. In this case language has been used which, it is contended, is susceptible of two constructions. One of these constructions re-

sults in conflict with other parts of the same instrument. This in itself is an indication that the meaning derived by such construction was not the intention of the legislators. If the general words "other elective officers" be construed in connection with the specific terms which precede them, and be held to include only such officers as are of the class and kind of Governor, to wit, executive officers, the meaning of this section is harmonized with the other provisions of the Constitution. This principle of statutory construction is everywhere recognized and acted upon by the courts, with respect both to civil and to penal statutes. Its application to the section of the Constitution under consideration is not opposed by the language of the section and results in giving to it a meaning and effect that harmonizes it with section 30, art. 5.

In *State v. Walsh*, 43 Minn. 444, 45 N. W. 721, the statute under consideration made it criminal to displace, remove, or destroy "a rail, sleeper, switch, bridge, viaduct, culvert, embankment or structure appertaining to or connected with a railway." The court held, applying the rule of *ejusdem generis*, that the general term "structure" did not include a fence inclosing a strip of land occupied by a railroad company for its railway.

In *Chegaray v. Mayor*, 13 N. Y. 220, the statute exempted from taxation "every building erected for the use of a college, incorporated academy, or other seminary of learning." It was held that "other seminary of learning" did not include a school for girls which was unincorporated; that these general terms were to be construed in connection with the preceding words, "colleges and incorporated academies," all of which were corporations.

Other cases applying this rule are numerous and may be found collected in a note to section 422 of Lewis' Sutherland's Statutory Construction.

Plaintiff insists that the phrase, "including justices of the Supreme Court," opposes the interpretation of the words, "other

elective state officers," as meaning other elective state executive officers. The word "including" is the participial form of the verb "include," which, by Webster's Dictionary, is defined in its primary sense to mean: "To confine within; to hold; to contain; to shut up; to inclose; as the shell of a nut includes the kernel. A pearl is included in a shell." And by the Century Dictionary: "To comprise as a part." Some of the courts have interpreted the word "including" in the primary sense as defined in the dictionaries and as contended for by plaintiff; but to hold that the word is used in that sense in this case would require the construction of the general words preceding it as embracing all elective state officers regardless of class or kind, thereby making them in conflict with section 30 of article 5. This word has also been defined as having an accumulative sense and as classing that which follows with that which has gone before.

In *The Little Ann*, 15 Fed. Cas. 623, the court had under consideration that clause in the judiciary act (Act Sept. 24, 1789, c. 20, 1 Stat. 73) declaring that the district courts should have "exclusive general cognizance of all civil causes of admirality and maritime jurisdiction, including all seizures under laws impost, navigation, or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of 10 or more tons burthen, within their respective district; and of all seizures on land or other waters than as aforesaid made, and of all suits for penalties and forfeitures incurred under the laws of the United States." In commenting upon the significance of the word "including" in this statute, the court said:

"The terms used not only vest cognizance in all civil causes of admiralty and maritime jurisdiction, but also in all cases of seizures made as above mentioned. The term 'including,' which has been so much and so ingeniously relied on, as only classing such seizures with civil causes of admiralty and maritime jurisdiction, while it admits and has received from the Supreme Court that signification, is not necessarily to be taken in that

Vol. 24—38

sense alone. It not only thus classes these seizures, and thereby shuts out a trial by jury, but it has also an accumulative meaning, and extends the jurisdiction of these courts to cases of such seizures. If it had only given to these courts the cognizance of civil causes of admiralty and maritime jurisdiction, prosecutions for forfeitures would not have been comprehended in such grant, which *ex vi termini* is confined to causes between individuals where the proceedings are *in rem,* such as suits or libels for seamen's wages, or bottomry bonds and the like."

See, also, *United States v. The Schooner Betsey et al.,* 4 Cranch, 443, 2 L. Ed. 673.

It is in this accumulative sense that, we think, the word "including" is used in the provisions under consideration. Without the phrase "including justices of the Supreme Court," such officers would not have been included in the preceding phrase of the section and would not have been subject to impeachment; but by this phrase of the section the power of the Legislature to impeach is extended to such officers. It is urged against such construction that it leaves no provisions for the impeachment of the members of the Criminal Court of Appeals who are state officers in the fullest sense of the word, and that, if they may be removed from office at all, it must be by some statutory provision. It may be said, in answer to this, that the Constitution, while authorizing the creation of a Court of Criminal Appeals, did not create such court, and it may not have been in the contemplation of the framers of the Constitution that such court would be created immediately, and it would not have been unreasonable in the framers of the Constitution and the people in adopting it to have intended to postpone the enactment of a law for the removal of such officers until the same were created. This criticism goes rather to the merits and policy of the provision than to its legal effect. The section, if construed as plaintiff contends for, would, in a measure, be subject to the same criticism, for it would then provide for the impeachment only of elective officers, and no constitutional provision exists whereby appointive officers are subject to impeachment, and a remedy or

means for the removal of such officers for official misconduct is left by the Constitution for legislative disposition.

2. Section 2, art. 8 (section 200, Bunn's Ed.), of the Constitution, provides:

"All elective officers, not liable to impeachment, shall be subject to removal from office in such manner and for such causes as may be provided by law."

At the time of the admission of the state, section 5201, Wilson's Rev. & Ann. St. 1903, was in force in the territory, and provided as follows:

"An accusation in writing against any county, township, city or municipal officer, for wilful or corrupt misconduct in office, may be presented by the grand jury to the district court of the county in or for which the officer accused is elected or appointed."

The subsequent sections, down to and including section 5211, prescribed the proceedings for presenting such accusation to the district court, and trial thereon, and the judgment to be rendered. Section 5212 reads:

"The same proceedings may be had, on like grounds, for the removal of any territorial officer elected by the people of the territory, or appointed by the Governor thereof, except delegate to Congress and members of the Legislative Assembly."

These provisions of the statute, upon the admission of the state, were extended in force except in so far as they are in conflict with the Constitution, or are inapplicable. It is under the provisions of these sections that the accusation returned by the grand jury of the district court of Pottawatomie county against plaintiff was made. It is urged by plaintiff that the district court has not jurisdiction under these provisions of the statute for substantially the following reasons: First, that section 5212 does not contemplate officers other than of the character of state or territorial officers appointed for a county; second, that, if it included territorial officers in the larger sense of that word, it does not include district judges for the reason that, prior to the admission of the state, it did not include such officers, because no such territorial officers existed; third that the action is a criminal action in the nature of a prosecution for a misdemeanor, and that

the county courts are given by the Constitution exclusive jurisdiction in all misdemeanor cases of which the justices of the peace have not jurisdiction.

That the first of these contentions is without merit appears to us to require only a reading of the provisions of the statute. Section 5201 provides that proceedings for removal by accusation of the grand jury may be brought against any county, township, city, or municipal officer. Those respective classes of officers are specifically named in this section. The language of the section is sufficiently broad to include and cover every character and all classes of officers of a county, township, city or municipality. Nothing is required to extend the terms of this section for that purpose. The language of section 5212 says that the same proceeding may be had for the removal of "any territorial officer." These general terms are not preceded or followed by any specific terms to limit them, and that they were intended to be used in the general and comprehensive sense is evidenced by the subsequent clause which excepts therefrom delegates to Congress and members of the Legislative Assembly. Neither the delegate to Congress nor members of the Legislative Assembly were officers in the county government or for a county. They were territorial officers in the broadest sense of the term, and, since these officers formed the subject of the excepting clause, it clearly appears that it was the legislative intention to save from the operation of the preceding clause these two classes of officers. If the general terms "any territorial officer" were intended to embrace only such officers as were elected or appointed in or for a county, there would have been no necessity for excepting therefrom these two classes of officers, for they would not have been included within the preceding clause. This section authorized the removal of any territorial officer elected by the people or appointed by the Governor by the proceedings provided for by the chapter of which it forms a part. It is true that, under the laws in force in the territory, but few officers of such class existed, and therefore but few upon which this section of the statute op-

erated; but the language is general in its terms and is sufficiently broad to embrace all within the classes named. Upon the extension of the statutes in force in the state under the provisions of. the Schedule to the Constitution and the Enabling Act, this section authorizes the removal of any state officer elected by the people of the state or appointed by the Governor thereof in the manner and under the procedure prescribed in the article of which this section is a part, except as the same may have been modified by the Constitution or is inapplicable. At the time of the enactment of this statute, no territorial district judges existed upon whom it could operate, for the judges of the district courts of the territory were not territorial officers and were not elected by the people of the territory or appointed by the Governor thereof, but if the Organic Act had been amended, or had it been provided by act of Congress before the admission of the state that such office should be created, and that the occupants thereof should be elected by the people of the territory or should be appointed by the Governor of the territory, then such officers would have fallen within the operation of this statute, although the offices which they occupied had not been created and had no existence at the time of the enactment of the statute.

Discussing the operation of a statute on persons and things not in existence at the time of its enactment, the Supreme Court of the United States, in the case of *De Lima v. Bidwell,* 182 U. S. 1, 21 Sup. Ct. 743, 45 L. Ed. 1041, said:

"While a statute is presumed to speak from the time of its enactment it embraces all such persons or things as subsequently fall within its scope, and ceases to apply to such as thereafter fall without its scope. Thus a statute forbidding the sale of liquors to miners applies not only to minors in existence at the time the statute was enacted, but to all who are subsequently born, and ceases to apply to such as thereafter reach their majority. So, when the Constitution of the United States declares in article 1, § 10, that the states shall not do certain things, this declaration operates not only upon the 13 original states, but upon all who subsequently become such; and when Congress places certain restrictions upon the powers

of a territorial Legislature, such restrictions cease to operate the moment such territory is admitted as a state. By parity of reasoning a country ceases to be foreign the instant it becomes domestic. So, too, if Congress saw fit to cede one of its newly acquired territories (even assuming that it had the right to do so) to a foreign power, there could be no doubt that, from the day of such cession and the delivery of possession, such territory would become a foreign country, and be reinstated as such under the tariff laws. Certainly no act of Congress would be necessary in such case to declare that the laws of the United States had ceased to apply to it."

We are not impressed with the argument that this is a Criminal action of the class of a misdemeanor. It is not defined to be such by any statutory provision. Our statutes provide that remedies in the courts are divided into two classes, to wit, actions and special proceedings. An "action" is defined to be an ordinary proceeding in a court of justice in which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. All other remedies are classed as "special proceedings." Actions are divided into two classes, to wit, civil and criminal. A "criminal action" is defined to be one prosecuted by the state as a party against a person charged with a public offense for the punishment thereof. Every other action is a "civil action." Section 4201 and 4206, Wilson's Rev. & Ann. St. 1903. The class to which any proceeding belongs is determined by the relief sought and the judgment that can be rendered. A proceeding to remove an officer under article 4, Wilson's Rev. & Ann. St. 1903, is not to punish for a violation of the penal laws. No judgment assessing a fine or imprisonment can be rendered in such action. The purpose of it is to relieve the people from faithless, corrupt officers, who have violated their trust, by affording a speedy and adequate means for their removal. That its object is not to punish for an offense committed against the penal law is evidenced by the fact that the remedy it affords and the judgment that can be rendered in such action can only be availed of while the defendant occupies his office. If the of-

fense be not discovered during the pendency of his term the action will entirely fail to serve the purpose of affording a punishment for the offense committed.

In *Rutter v. Territory,* 11 ·Okla. 454, 68 Pac. 507, which is an action brought under the· statute now under consideration, Mr.· Justice McAtee, speaking for the court. said:

"We understand by this provision of the statute that the defendant, in the ·proceeding ·under consideration, cannot stand upon all the technicalities which. have been o·; may be devised in the testing and trial of an indictment; and there is good reason for this position found not only in the express direction of the statute which has been herein recited, but also in the fact that no criminal punishment is imposed as a· result of a verdict of guilty of the matters charged in the accusation, but that the judgment founded thereon, shall be removal from office, a .relief which should be ready, speedy, and accessible in behalf of the people who have selected the official and who ought to, if the charge of the corruption and ' wilful misconduct of officials whom they have elected has been sustained upon an accusation expressed in such plain and simple ·language as that a person of plain and common understanding may know . what is intended."

The court in the first syllabus to this case ,held .that such a proceeding is a "special· proceeding," to be conducted under the. procedure prescribed .therefor by the statute. This expression of the court in the syllabus, in our view, is supported by the weight of authority in number, as well as by the better reasoned cases. *Skeen v. Craig,* 31 Utah, 20, 86 Pac. 487; *Rankin v. Jauman,* 4 Idaho, 53, 36 Pac. 502; *Ponting v. Isaman,* 7 Idaho, 283, 62 Pac. ·680; *Myrick v. McCabe,* 5 N. D. ,422, 67 N. W. 143. . ...

Section 5210, as to the class of actions now under consideration, provides:

"The trial must be by jury and conducted in all respects in the same manner as the trial of an .indictment for a misdemeanor."

It is insisted that, if this proceeding be not a "misdemeanor" in the technical sense, it must be tried in some court that has power to impanel a jury of six men, and therefore would

have to be tried in the county court. The only result that could follow this contention as to the meaning of section 5210 would be to render the statute inapplicable, for the reason that no court that has jurisdiction of the proceeding has power to impanel the jury in the manner prescribed by the statute for the trial of such causes; but we do not think that this section requires that the jury in the trial of such causes shall consist of six men. The language of the statute is, not that the trial shall be in all respects as the trial of an indictment for a misdemeanor, but that the trial must be, first, by jury, and, second, must be conducted in all respects as the trial of an indictment for a misdemeanor. At the time of the enactment of this provision, the phrase "trial must be by jury" was evidently used by the legislators as contemplating that the trial should be by such a jury as may be impaneled in the district court where the venue of this action was placed at that time, which jury consisted of 12 men, for, as before stated, this is a special proceeding, the jurisdiction of which has been given to the district court. It is not a misdemeanor action, nor does the statute require that every step of the procedure shall be the same as a misdemeanor action, for, by the provisions of the statute, distinct and different procedure is prescribed as to many steps. At the time of the enactment of the statute, the jury for the trial of special proceedings in the district court consisted of 12 men, and consists of that number now under the Constitution. By the phrase, "conducted in all respects in the same manner as the trial of an indictment for a misdemeanor," it was intended to provide that in the introduction of evidence, as to the degree of proof required and in the giving of instructions to the jury, the rules of law applicable in a trial upon an indictment for a misdemeanor should apply.

It has been urged that to hold that section 5212, *supra,* and the other sections of article 4 of the Criminal Code of Wilson's Revised and Annotated Statutes of 1903, authorized the removal of district judges under the provisions thereof, is to convict the Legislature enacting this statute, the framers of the Constitution,

and the people who adopted it, of having extended in force in
the state an uncommon and absurd provision for the removal of
district judges, in that it authorizes one district judge to hear
and determine a proceeding for the removal of another district
judge of equal powers and jurisdiction. The criticism that the
statute is uncommon is probably well founded, for in most states
of the Union removal of district judges is, under constitutional
provision, by impeachment. In those states where they are not re-
movable by impeachment, provisions either constitutional or stat-
utory generally exist for their removal by some proceeding in the
Supreme Court, or in some court of superior jurisdiction to the
jurisdiction of the district court; but that it is subject to the
criticism that it is an absurd provision we cannot so readily see.
It not infrequently occurs that civil cases and sometimes criminal
cases arise in the district court in which the judge thereof is
disqualified and cannot sit. For such contingencies it is usually
provided by statute or by the Constitution for the substitution of
a judge for the trial of such cases. The Constitution of this
state has amply provided for such contingencies in section 9,
art. 7 (section 179, Bunn's Ed.), by providing that, in event
any judge shall be disqualified for any reason from trying any
case in his district, a judge *pro tempore* may be selected, or a
district judge from some other district may be designated by the
Chief Justice of the Supreme Court as judge *pro tempore* to
try such case. As to any case in which the presiding judge in
the district is disqualified, the judge *pro tempore* appointed or se-
lected in the manner provided by the Constitution is judge of
the court of that district for the purposes of that case, and,
while it may be uncommon we are unable to see any legal rea-
son why a judge of another district could not sit in the trial
of a case for the removal of a district judge of any given district
as he could in any civil case or other special proceedings in which
such judge might be interested, and render judgment in accord-
ance with the verdict of the jury, favorable or adverse to such
disqualified judge. The district courts of this state are the

courts of general jurisdiction most accessible to the people for the trial of their causes and for the enforcement of their rights, and equally accessible in cases of this character to defendants for the purpose of making their defense, and the right of trial by jury is guaranteed to them by the provisions of the statute, and whatever defect there may be in the policy of the law, with which this court has nothing to do, the construction here given to the statute does not to our minds lead to any such absurd consequences as to indicate that we have reached the wrong conclusion, but, on the other hand, affords to the people, and to the officeholders against whom charges are preferred for misconduct in office, an opportunity for a speedy, fair, and impartial trial, and has the further merit that it can be easily changed, at any time by legislative enactment.

3. Article 4 of the Criminal Code authorizes the removal of county, township, municipal, and territorial officers upon accusation made by the grand jury and conviction thereof in the manner provided by said article. There is also another provision of the statute prescribing a different procedure by which some of those officers may be removed. Section 3745, Wilson's Rev. & Ann. St. 1903, provides that "all elective or appointive county, township and other officers may be charged, tried and removed from office for any of the causes enumerated" in that section. Section 3746 provides that the board of county commissioners, in the name of the county, shall make such charge and bring the action for the removal under the provisions of the preceding section; but, if the county commissioners are the parties charged, then the probate judge and the county treasurer shall bring the action, or that the proceedings may be in all cases instituted as provided in said article 4 of the Code of Criminal Procedure. The class of officers included within the provisions of these sections did not include territorial officers, and therefore does not include state officers. The effect of these sections is to provide a new and distinct procedure for the removal of county, township, and other officers of like class from the procedure pre-

scribed by article 4 of the Criminal Code. Section 3747 provides that, when a complaint for removal is filed, if, in addition to the matter charged as a ground for removal, the complaint shall also pray that the officer charged be suspended from office pending the investigation, the judge of the court may, upon sufficient cause, suspend the accused from the functions of his office until the determination of the matter. This section, by express provisions, confers upon the judge of the court the power to suspend any officer against whom charges are brought for removal from office under the procedure prescribed by the preceding sections.

Counsel for defendant insist that these sections of the statute are *in pari materia* with the provisions of article 4 of the Criminal Code and are to be construed together as though they constituted one act, and as conferring upon the judge of the court power to suspend from office pending the final investigation of the officer accused, whether the proceeding be brought under the provisions of sections 3745 and 3746 or under the provisions of article 4 of the Criminal Code. This contention, we think, could be true only as to county officers and other officers of that class, if true at all, which questions we do not decide, for the reason that the class of officers under contemplation in sections 3745 and 3746 does not include territorial or state officers, and the Legislature had in mind only the authorization by those provisions of the statute of the suspension of such class of officers as are enumerated in section 3745. This intention appears from the last sentence of section 3747, which reads:

"When a suspension takes place, the board of county commissioners may temporarily fill the office by appointment, but if the officer suspended be a county commissioner, then the vacancy shall be filled as in other cases of vacancy in that office."

This language provides for the filling of a vacancy which occurs as a result of suspension made under provisions of that section. Now we think that it could not have been the intention of the Legislature to authorize the board of county commissioners to fill a vacancy in a territorial or state office, but that the legislative intent was to make provisions for filling such vacan-

cies as would occur from the power to suspend as conferred by that section. No express statutory provision authorizing the suspension of any officer accused under section 5212 exists, and, if the district court in the case at bar ·has the power to suspend plaintiff pending the final hearing of the cause now pending before it, it must have such power by virtue of the same being included within the power to remove for cause.

As to which side of this question·is supported by the weight of authority, the expressions of the text-writers prove unreliable when the cases cited by them as supporting their assertions are carefully examined. Throop on Public Officers, at section 404, states that the weight of authority in this country is that·the power to suspend an officer does not follow from the grant of the power to remove him, or even from general words in a statute which may refer to something besides removal. In support of this assertion, the author cites the following three decisions: *Metsker v. Neally,* 41 Kan. 122, 21 Pac. 206, 13 Am. St. Rep. 269; *State v. Jersey City,* 25 N. J. Law, 536; *Gregory v. Mayor,* 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854.

*Metsker v. Neally* is not a case in point and fails to support the doctrine asserted by the author. The only question involved in that case was the power of the mayor of a city of the first class to suspend a city engineer when, under the charter, he had neither the power to suspend nor to remove such officer given in express terms. The court did not pass upon the question whether the power to remove for cause included as incident to it the power to suspend pending the final determination; but the opinion of the court contains an expression which is directly opposed to the doctrine of the author's text, to support which he cites the case. The court uses the following language:

"They claim that the authority to amove a city officer requires a greater amount of power than to simply suspend him; that a mayor, by virtue of his office, and as an incidental and inherent power thereof, can at any time suspend an officer, even though he may have no power given by statute or ordinance to amove him. They cite authorities which are to the effect that

the power to suspend is included in the power to amove. We *can readily believe that the greater power to amove·might include the lesser one to suspend;* but we have failed to notice any instance where the power to amove is not conceded that the authority to suspend is admitted." (Italics are ours.)

· *Gregory v. Mayor* arose upon a state of facts which distinguishes it from the case at bar. In that case, as it appears from the expression of the court in the opinion, the excise board of the city was authorized under the statute to expel or remove an inspector without cause being shown, charges made, or any investigation thereof. The board, acting under the statute, suspended one of the inspectors indefinitely. It was held that the board was without power to suspend. In speaking of the nature of the power of the board, the court said:

"The commissioner might believe that the inspector was not doing his duty, and yet be unable to show exactly wherein he failed. Proof thereon on charges, to be regularly preferred would amount almost to a denial of the power to remove because, the duty being of such a nature as above described and to be performed beyond the view of the commissioners, the inference of a failure to perform them might be based upon such a number of disconnected facts that it would not be regarded as justified upon a regular trial. Hence the necessity of a power to remove when the commissioners might feel there had been a dereliction of duty without being able to point out any specific fact as evidence thereof, while the power of indefinite suspension, without pay, would not add anything to the security of the city or the power of the commissioner to obtain honest service. If the employee were unfit, it would be the duty of the commission to remove him at once. If not unfit, he should not be suspended indefinitely, without pay."

The statute gave to the board of commissioners the arbitrary power to remove the inspector. Under such authority they attempted to exercise the power of indefinite suspension.

In *State v. Jersey City, supra,* which appeads to be in point, the court stated the doctrine to be that the power to expel does not authorize a city council to suspend a member from the exercise of the duties of his office.

Mechem on Public Officers, at section 453, discussing this question, says:

"Although there is a conflict in the authorities, the better opinion seems to be that the power to remove an officer does not include the power to *suspend* him temporarily from the office."

In support of this text, the author cites only the New York and New Jersey cases above referred to, and, at the same time, refers to two other cases, one from New Hampshire and one from Missouri, holding the contrary doctrine, and these cases are the only cases which have been called to our attention as supporting the contention of plaintiff that the power to remove for cause does not include the power to suspend pending the hearing of charges made for such removal. The following cases support the contrary doctrine: *Shannon v. Portsmouth,* 54 N. H. 183; *State v. Police Commissioners,* 16 Mo. App. 48; *State v. Megaarden,* 85 Minn. 41, 88 N. W. 412, 89 Am. St. Rep. 534.

In each of these three cases, the authority to remove for cause existed under the statute; but there was no express grant of power to suspend pending final hearing. In *Shannon v. Portsmouth,* the court dismissed the question without discussion or the citation of authorities, with the statement that it did not seem to require any argument to show that the power to suspend was included in the power to remove. In *State v. Police Commissioners,* the court said:

"The suspension of an officer, pending his trial for misconduct, so as to tie his hands for the time being, seems to be universally accepted as fair, salutary, and often necessary incident of the situation. His retention, at such a time, of all the advantages and opportunities afforded by official position, may enable and encourage him, not only to persist in the rebellious practices complained of but also to seriously embarrass his triers in their approaches to the ends of justice. In the absence of any express limitation to the contrary—and none has been shown—we are of opinion that, in cases where guiltiness of the offense charged will involve a dismissal from office, there is, on general princples, no arbitrary or improper exercise

of a supervisory authority in a suspension of the accused pending his trial in due and proper form."

In *State v. Megaarden,* which is directly in point, both the statute conferring the power, and the facts upon which the case arose, being very similar to the statute and facts in this case, the court entered into a very full discussion of the question and reviewed and distinguished *Gregory v. Mayor, supra,* and, speaking of the necessity of exercise of this power where the power is conferred by statute to remove for cause, the court said:

"A better illustration of the necessity of holding that such incidental right exists cannot be made than in the case of an investigated sheriff, who as executive officer of the county, enjoys great influence, which might readily extend to the control of papers absolutely necessary to determine the matters under investigation. He might, if so disposed, prevent the use of other evidence necessary to a full and fair hearing of the charges against him. If the alleged acts of misconduct were, as they might supposedly be, made the grounds of inquest by the grand jury upon which further proceedings would depend, it is easy to see how he would have a deep interest in withholding or permitting use of means that would result in just and effectual prosecution; and, if he might hold the office until removed by the Governor, a trial of an indictment against him might be made useless in various ways by the exercise of his power and influence in the court where such trial would be conducted, as well as in the investigation by the commissioners."

In discussing this question, the rule is stated in Cyc. (volume 29, p. 1405) as follows:

"Where no express power to suspend has been granted, the courts do not recognize that the power is included within the arbitrary power to remove, for the exercise of the power to suspend will produce an interregnum in office. The ends of discipline in such a case may be sufficiently subserved by the exercise of the power of removal and do not require the recognition of a power to suspend; but, where the power of removal is limited to cause, the power to suspend, made use of as a disciplinary power pending charges, is regarded as included within the power of removal."

As between these two rules, which appear to be about equally

supported by the authorities, we feel constrained to adopt and follow that rule which appears to us will be more conducive to the administration of justice and the protection of the public against delinquent and corrupt office holders, and to hold that the power to remove for cause, after a hearing only, includes the power to suspend temporarily pending such hearing. This power, however, is not a power that should be exercised arbitrarily, and the courts unquestionably will exercise it only when strong reason exists therefor, and will not impose unnecessary burdens upon the accused official, when, after a review of the circumstances surrounding the case and other reasons offered why the power should be exercised, it does not appear that the exercise of such power is necessary to the administration of justice and the protection of the public against such accused office holder. The court will exercise or refuse to exercise it in each case, as in his sound discretion the facts and circumstances peculiar to that case require.

We therefore conclude: That the district judge is not subject to impeachment; that all state officers elected by the people or appointed by the Governor, whose removal has not otherwise been provided for by the Constitution, or exclusive provision made for the removal thereof by statute, may be removed under the provisions of article 4, c. 68, Wilson's Rev. & Ann. St. 1903; and that, pending a final hearing of a proceeding under such statute to remove a state officer, the court in which such cause is pending may suspend the accused officer from the exercise of the functions of his office.

The writ is denied.

Dunn, Turner, and Williams, JJ., concur; Kane, C. J., not participating.