ATTORNEY GENERAL — AUTHORITY TO PROSECUTE House Resolution No. 1182, Second Regular Session, Thirty-fourth Oklahoma Legislature, 1974, relates only to offenses in connection with the state building project contracts and only to elected state officers and employees or appointees in office at the time the resolution was adopted. House Resolution No. 1182 does not grant the Attorney General authority to proceed with prosecution, by Information, of an elected state officer who had resigned prior to the adoption of the resolution. Title 19 O.S. 215.4 [19-215.4] (1971) places the authority and the duty upon the District Attorney to prosecute those individuals who have committed crimes within his district. After three years the statute of limitations would prohibit the prosecution for the crime of falsifying claims against the State of Oklahoma. A determination as to whether a state officer may be impeached and removed from office for impeachable conduct during a previous term or terms of office is ex clusively within the jurisdiction of the Legislature. The Attorney General is in receipt of your request for an official opinion wherein you ask, in effect, the following questions: 1. Does HR 1182 grant the Attorney General authority to proceed with prosecution, by Information, of an elected state officer who had resigned during the term of office in which the resolution was passed but had resigned previous to the passage of such resolution? 2. If you conclude that the Attorney General does not have authority to prosecute such former elected state officer, who is responsible? 3. When does the statute of limitations prohibit prosecution for falsifying claims in the State of Oklahoma? 4. Does the impeachment provision of the Oklahoma Constitution authorize the removal from office by impeachment of one subsequently elected to another term on the basis of impeachable conduct during a former term in that office? Your first question involves an interpretation of House Resolution No. 1182, Second Regular Session, Thirty-fourth Oklahoma Legislature, (1974), which relates to the report of the Attorney General transmitted to the Legislature on April 22, 1974, concerning his "investigation into possible corruption and kickbacks relative to state building project contracts". The resolution authorizes the Attorney General to institute and proceed with the prosecution of any elected state officer, and the employees or appointees of any elected state officer, if the Attorney General determined that such prosecution was warranted. A reading of the complete resolution reflects that the subject of the resolution pertained only to possible corruption and kickbacks relative to state building project contracts and that the authority granted to the Attorney General to institute and proceed with criminal prosecution related only to offenses in connection with the state building project contracts and in that instance only to elected state officers and employees or appointees in office at the time the resolution was adopted by the House of Representatives. Your second question involves the prosecutorial authority for crimes against the State of Oklahoma. The duty of the District Attorney in this regard is set forth in 19 O.S. 215.4 [19-215.4] (1971), which provides in pertinent part as follows: "The District Attorney or his assistants shall appear in all trial courts and prosecute all actions for crime committed in his district, whether the venue is changed or not; . . ." The above quoted statute places the authority and the duty upon the District Attorney to prosecute those individuals who have committed crimes within his district. Your third question involves the statute of limitations for the prosecution for the crime of falsifying claims against the State of Oklahoma in violation of 21 O.S. 358 [21-358] (1971). There is no specific statute of limitations for falsifying claims against the State, therefore, the applicable statute of limitations is 22 O.S. 152 [22-152] (1971), which provides "in all other cases a prosecution for a public offense must be commenced within three (3) years after its commission". It, therefore, follows that after three years the statute of limitations would prohibit the prosecution for the crime of falsifying claims against the State of Oklahoma. Your fourth question relates to the authority of the Oklahoma Legislature in the impeachment of a public official. Article VIII, Section 1 of the Oklahoma Constitution states: "The Governor and other elected state officers including the Justices of the Supreme Court shall be liable and subject to impeachment for willful neglect of duty, corruption in office, habitual drunkenness, incompetency or any offense involving moral turpitude committed while in office. All elected state officers, including Justices of the Supreme Court and Judges of the Court of Criminal Appeals shall be automatically suspended from office upon their being declared guilty of a felony by a court of competent jurisdiction and their pay and allowances otherwise payable to such official shall be withheld during the period of such suspension. In the event such verdict of guilty is reversed by a court of competent jurisdiction on appeal, such accumulated pay and allowances which have been withheld shall be paid to such official and he shall be automatically reinstated in the office to serve the remaining part of the term for which he was elected. Such official shall not be entitled to any pay or allowance for a period of time after the term of office would otherwise have expired and he shall not be entitled to reinstatement in office after the expiration of the term for which he was elected . . . . " Article VIII, Section 3 states: "When sitting as a court of impeachment, the Senate shall be presided over by the Chief Justice or if he is absent or disqualified then one of the Associate Justices of the Supreme Court to be selected by it except in cases where all the members of said Court are absent or disqualified or in cases of impeachment of any Justice of the Supreme Court then the Senate shall elect one of its own members as a presiding officer for such purpose. The House of Representatives shall present all impeachment." Article VIII, Section 5 states: "Judgment of impeachment shall not extend beyond removal from office, but this shall not prevent punishment of any such officer on charges growing out of the same matter by the courts of the State." The Constitution confers exclusive jurisdiction upon the Legislature and defines the duties of each House in cases of impeachment. This, in the absence of provisions to the contrary, would logically imply that courts have no jurisdiction over, nor the power to interfere in, cases of impeachment. While the Oklahoma Constitution does not define impeachment, nowhere does it prohibit the Legislature from defining the term and the extent of its meaning. The Oklahoma Supreme Court in State ex rel Trapp v. Chambers, 220 P. 890 (1923), in the Syllabus of the Court stated: "The Legislature, being otherwise in legal session, is, by the Constitution, given definite governmental duties, and has exclusive jurisdiction over matters of impeachment, and the acts of the Senate and House of Representatives, in the exercise of this jurisdiction, are not subject to review or interference by the courts." In the body of the opinion the Court held as follows: "While the Constitution does not attempt to define the term 'impeachment', nor the extent of its meaning, nor expressly authorize the Legislature to define its meaning, yet it nowhere prohibits the Legislature from defining the term and the extent of its meaning; hence, having given the Legislature exclusive jurisdiction in impeachment matters, and not having limited the Legislature in defining the term, it was a valid exercise of legislative authority for the Legislature to define what is meant by the term 'impeachment' as used in the Constitution." The Oklahoma Constitution is silent as to whether a state officer may be removed from office by impeachment for impeachable conduct during a former term of that office. Hence, it is within the purview of the Legislature to determine whether any impeachable offense has been committed while in office, and to define and determine whether " in office " shall be inclusive of a previous term or terms "in office". It is of particular significance that elective officers not subject to impeachment, that is those subject to ouster from office, may be ousted for offenses committed during the previous term or terms of office. The pertinent language found in 22 O.S. 1181.1 [22-1181.1] (1971), is as follows: "All elective officials in the State of Oklahoma . . . excluding any elected official liable to impeachment . . . may be removed or ousted from office for any act or acts of commission, omission or neglect committed, done or omitted during a previous or preceding term in such office." The purpose of impeachment as stated in State v. Sullivan, Ariz., 199 P.2d 592 (1948), is: "The object of prosecutions of impeachment in England and the United States is to reach high and potent offenders, such as might be presumed to escape punishment in the ordinary tribunals, whether from their own extraordinary influence or from the imperfect organization and powers of those tribunals. These prosecutions are, therefore, conducted by the representatives of the nation, in their public capacity, in the face of the nation, and upon a responsibility which is at once felt and reverenced by the whole community. Story, Constitution, 688. . . ." A number of other jurisdictions have held statutes similar to 22 O.S. 1181.1 [22-1181.1] (1971) and proceedings for removal from office, for conduct during a previous term or terms of office, to be well founded and within the exclusive jurisdiction of the Legislature. An especially noteworthy case is .State v. Hill, 55 N.W. 794, wherein the Nebraska Supreme Court held: "The object of impeachment is to remove a corrupt or unworthy officer. If his term has expired and he is no longer in office, that object is attained and the reason for his impeachment no longer exists; but if the offender is still an officer he is amenable to impeachment although the acts charged were committed in his previous term of the same office." See also Application of Abare,248 N.Y.S.2d 826 (1964); State v. Fornea, 82 So.2d 468 (1955); Allen v. Tufts, 131 N.E. 573, 132 N.E. 322; State v. Welsh, 79 N.W. 369. There has also been expressed some concern as to whether each term of office is separate and entire. This was touched upon in State v. Welsh, supra, wherein the Iowa Supreme Court stated: "For many purposes each term of office is separate and entire. But there is no reason for so holding as to the incumbent. Being his own successor there is no interregnum. His qualification marks the only connection between his terms. The commission of any of the prohibited acts the day before quite as particularly stamps him as an improper person to be entrusted with the performance of the duties of the particular office as though done the day after." The Oklahoma Supreme Court defined the purpose of the ouster statutes in Maben v. Rosser, 103 P. 674, as follows: "A proceeding to remove an officer . . . is not to punish for a violation of the penal laws. No judgment assessing a fine or imprisonment can be rendered in such action. The purpose of it is to relieve the people from faithless corrupt officers who have violated their trust, by affording a speedy and adequate means for their removal." A reading of the Oklahoma Constitution, Article VIII, Section 5, supra, renders the conclusion that here again the purpose is not to punish for violation of the penal laws, but to rid the people of corrupt officers. The most recent impeachment and removal from office of an elected state official in Oklahoma was that of N. B. Johnson, Justice of the Supreme Court of Oklahoma. On March 24, 1965, the House of Representatives of the Oklahoma Legislature adopted two Articles of Impeachment for offenses involving moral turpitude committed while in office and corruption in office. Justice Johnson was serving a six year term of office to which he had been elected in 1960. The offenses included in the two Articles of Impeachment occurred in 1957 and 1959, during a previous term of office. On May 13, 1965, the two Articles of Impeachment were sustained by the Oklahoma State Senate and N. B. Johnson was removed from office as Justice of the Supreme Court of the State of Oklahoma. The Oklahoma Constitution is indeed silent as to whether a state officer may be removed from office by impeachment for impeachable conduct during a previous term or terms of that office. However, the Oklahoma Legislature has in the past exercised its exclusive jurisdiction over matters of impeachment and impeached and removed from office an elected state official for impeachable conduct during a previous term. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Your first question is answered in the negative. House Resolution No. 1182, Second Regular Session, Thirty fourth Oklahoma Legislature, 1974, relates only to offenses in connection with the state building project contracts and only to elected state officers and employees or appointees in office at the time the resolution was adopted. House Resolution No. 1182 does not grant the Attorney General authority to proceed with prosecution, by Information, of an elected state officer who had resigned prior to the adoption of the resolution. In answer to your second question, 19 O.S. 215.4 [19-215.4] (1971) places the authority and the duty upon the District Attorney to prosecute those individuals who have committed crimes within his district. The answer to your third question is that after three years the statute of limitations would prohibit the prosecution for the crime of falsifying claims against the State of Oklahoma. The answer to your fourth question is that a determination as to whether a state officer may be impeached and removed from office for impeachable conduct during a previous term or terms of office is exclusively within the jurisdiction of the Legislature. (Marvin C. Emerson)