**ROSE, et al. v. ARNOLD, Dist. Judge, et al.**

No. 28718.   Aug. 10, 1938.

Edward M. Box and Ray J. Watson, for petitioners.

John Barry, Wayne Wheeling, and Sid White, for petitioner Ross Lillard.

J. B. Dudley and Jack Spivey, for petitioner Ed. W. Spivey.

Everest, McKenzie & Gibbens, for petitioner Robin Knight.

Lewis R. Morris, County Atty., Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for respondents.

WELCH, J. This is an original action to prohibit the enforcement of orders made by the respondent, district judge, suspending the petitioners from office as members of the board of education of Oklahoma City. The county attorney and Attorney General are not essential parties, though named in the action  Our alternative writ issued July 5th permitted the district judge, who is hereinafter referred to as the respondent, to show cause why peremptory writ of prohibition should not issue, or in the alternative permitted the granting of a hearing to petitioners on the matter of their suspension after notice to each of them. The respondent elected not to grant such hearing, and, instead, to answer and make response and return in an effort to show legal cause why peremptory writ should not issue.

Such answer and response and return of the alternative writ of prohibition has been filed, and there is no controversy as to the facts.

Essential facts are that on Saturday, July 2, 1938, in the late afternoon a grand jury in district court presided over by respondent, Ben Arnold, presented accusations against the petitioners here, charging them with maladministration in their official acts as members of the board of education of Oklahoma City, and charging one of them (Spivey) with corruption in office, and seeking their removal from office. The accusations were filed at once, the grand jury discharged, and court adjournment was announced by the judge. Whereupon the county attorney called to the district judge's attention the fact that the accusations requested the suspension of the accused officers, and the district judge immediately ordered the petitioners suspended from office pending trial on the accusations. Thereafter the county attorney prepared copies of the accusations and a notice requiring the accused officers to appear and answer the accusations on July 15, 1938. These copies of accusations, and notices to appear and answer, were served on the petitioners herein. Some were served quite late on Saturday, July 2d, and others were served early in the morning of Monday, July 4th. The latter day being a legal holiday, the courthouse and the offices of the judge and court clerk were not regularly open for business, nor was the court regularly in session. However, about 11 o'clock a. m.. on that day, by request of the attorneys prosecuting the accusations, the court clerk and the district judge came to the courthouse, the clerk opened his office, and the judge opened court. Though without any court order to that effect, the clerk's appearance docket indicates that on that date and at that time the county attorney "withdrew" the accusations, and thereafter immediately refiled or "filed" the accusations, and also filed proof of service of copies of the accusations and of notice to appear and answer. The next entry by the clerk shows on that day the issuance of a second order of suspension of the accused officials, and the journal entry thereof in each case signed by the judge shows that at 11 o'clock a. m., on that day, July 4, the cause "comes on for hearing upon that part of the accusation in this cause which prays that the court suspend the above-named defendants and each of them from office." That journal entry then recites the appearance of the attorneys prosecuting the accusations, recites the service of copies and notice to appear and answer on July 15, recites the making of an oral application at that time by the attorneys for the immediate suspension of the officials, recites consideration of said oral application and the examination of the accusation, and the circumstances surrounding the case, finds that strong reasons exist for suspension, but does

not state what any such reason was, and orders the immediate suspension of the accused officers. That journal entry makes no reference to the order of suspension theretofore made on July 2d. The accused officers were not present or represented, nor did they have any notice or knowledge that the matter would be called up or would come on for hearing at the session of court, which was specially called for the making of this order on the morning of the 4th of July. On the contrary, they had been specifically notified that the matter would come up on July 15th for their appearance and answer.

The next entry by the court clerk indicates that on the same day, July 4th, and at the same time, upon oral application of the attorneys prosecuting the matter, the prior order of suspension of July 2d was vacated "as per journal entry," but there is no journal entry of an order showing such vacation of the prior order.

It is the contention of the petitioners in this court that whether the suspension of petitioners was accomplished by the first order of suspension of July 2d, or was accomplished by the second order of suspension of July 4th, the action of the court at the time and in the manner shown amounted to the making of an unauthorized application of judicial power and should be prohibited.

Upon the open hearing in this court the respondents admitted that the suspension order of July 2d was unauthorized and void, but they contend that on July 4th the former order of July 2d was vacated, and that the order of July 4th was valid and its enforcement should not be prohibited.

The only thing that occurred between the two suspension orders was the delivery to the petitioners of copies of the accusations, together with notice to appear and answer on July 15th. This had not been done when the first suspension was ordered, and this distinguishing fact is relied upon to distinguish the latter order of suspension as a valid and proper one.

The last two clerk's entries on the appearance docket above referred to under date of July 4th read as follows:

"July 4th Issued order of Suspension."

"July 4th Ent. Order. Presented the accusation to the court and proof of service to appear and answer and of accusation upon each defendant and orally applied to the court for an order of suspension as to each defendant. The court after considering the accusation, the said proof of service and oral application of the county attorney and Assistant Attorney General, ordered the prior order of suspension issued July 2, 1938, vacated and ordered a new order of suspension issued against each defendant as per J. E. Order of suspension issued. (Arnold.)"

The journal entry fully covers the matters mentioned in the last clerk's entry, except as to vacating the prior order of suspension of July 2d. The journal entry omits any reference whatever to the prior suspension or to any vacation of it.

Without deciding whether the order of July 2d was properly vacated by order of the court, or whether the suspension of these officials was accomplished by the order of July 2d, or by the order of July 4th, we should not declare and establish a rule for the future guidance of our courts that suspensions may safely be accomplished as was here undertaken. While it is true, as contended, that the suspension of the accused official does not exactly deprive him of a property right, yet it must be conceded that it is a matter of grave importance. If he is not guilty of the charges, he is done a grave injustice by an improper and wrongful suspension, and if he is guilty, or if he should be suspended, he should be suspended in an orderly manner, free from absolute invalidity. In any case it is safe to say that the application for suspension should be considered and acted upon with due judicial formality. For in such manner only can we preserve the public interest and at the same time do no unauthorized violence to the rights and interest of the private person.

It is conceded that the first suspension of July 2d is void, and accepting that as correct, since it is conceded, we consider the validity of the second suspension entered on the 4th of July. It is shown that when the court clerk and the judge were called to the courthouse at about 11 o'clock a. m., the clerk left the door of his office open, and that the judge upon the bench went through the formality of opening court, but it is clearly shown that the judge and the clerk were not at the courthouse at or near the beginning or opening business hours of the day, and that their presence was obtained and that they came to the courthouse only for the special purpose of permitting and taking action in this case, and that as soon as this case was acted upon, the judge and clerk left the

courtroom and the courthouse for the balance of the day, and that only officials and persons interested in the prosecution of these accusations were present or had any notice or knowledge of the matter until afterwards.

However sincere were the intentions of the presiding judge, we cannot but conclude that he was led into serious error in his overprompt suspension of these accused officials both on July 2d and at this hearing on July 4th. We are convinced that these orders were made without that deliberation and formality which should accompany judicial action. The necessary formalities of court action are sometimes thought to be useless and to bring unnecessary delay, but it is often true that the very deliberateness and formality of judicial action form the best guaranty and safeguard for the protection of the interest of the public and of the private persons concerned. In some cases it is true that the formalities necessarily cause long delay, but that need not be so as to the suspension of officials when they are accused of misconduct and their removal is sought. In all prior cases in this state, so far as we are advised, the suspension of accused officials has been accomplished when the officials were present or had information of the application for suspension. In this case it would have been a simple matter, with but little delay, to have advised the accused officials when their suspension would be asked for, so as to permit them to be present and to show cause, if they desired, why the suspension should not be ordered. Nothing of this kind was done, but, on the contrary, the order was made as above stated. The court's hearing and action on July 4th was, to say the least, not usual and orderly. The courts and offices were not regularly open for business. The hours of that day, a state and national holiday, were not regular and usual hours for court hearings or judicial action. The matter was not previously set for that day. Had these accused officials desired to make any appearance or file any pleadings on that day, they would have found the offices closed except for the brief period when the judge and clerk were specially there. The hours of that day for court action were somewhat similar to night hours, or after office hours or before office hours of regular business days. While the importance of a case might sometimes require that an accused official be suspended at such a hearing at such unusual hours, the order could easily recite any such necessity. None was here stated.

A case has not come to our attention where it was deemed necessary to obtain suspension with anything like the occasion of dispatch presented by these circumstances. Therefore there is no prior decision controlling on all the exact points here involved. The statutes do not control on these points; however, in other character of removal actions there are specific provisions, as to notice and for early trial and the like. So that while the Legislature may in the future make specific provisions on the matter, the rule which we now establish must prevail throughout the state in similar cases until there is such legislative provision.

Many considerations dictate that in fairness and justice and in the interest of orderly judicial procedure, an accused official should have the right to reasonable notice and to be present when his suspension from office is presented and considered by the trial court.

Cases have come to our attention where accused officials, appearing in opposition to suspension, were able to show ample grounds for the immediate quashing and dismissal of the accusation, in which action, of course, no prior suspension without notice or opportunity to be heard could have been justified. Cases have also come to our attention in which accused officials appearing in opposition to suspension have been able to show positive prejudice and bias and disqualification of the presiding judge to hear the application for suspension, and in such case the prior suspensions by that judge without notice or opportunity to be heard would not have been proper. In all such cases the right of accused officials to present any such matters would be entirely cut off by the rule contended for by respondent, which is in effect that upon presentation of the grand jury accusations, the court may immediately, if not arbitrarily, suspend the officer, and that, too, without any contemporaneous order setting the matter for trial on the accusation. And in some cases, or as to some accused officers, it might readily appear upon hearing, when he was present, that suspension as to him was not necessary or would be improper. It is not necessary that we here undertake to notice all of the circumstances wherein serious impropriety or actual injustice might accompany immediate suspension, or the lack of orderly consideration and action on suspension which is here apparent. We deem this sufficient to demonstrate that the rule here contended for supporting this suspension should not be adopted.

We deem it unfair to the trial judge to require or authorize that he pass on the important matter of suspension of an elected officer and determine it merely upon the allegations of the accusation. And we deem it unfair to the elected official to have the matter of his suspension determined merely upon the allegations made against him by his accusers.

Respondents point out that a public officer does not have any "property rights" in his office, but this court said in Christy v. City of Kingfisher, 13 Okla. 585, 76 P. 135, that:

"A public office, while not property, is a position held of right by election or appointment, and all of the courts are quick to protect one in the enjoyment of those rights. They may differ, as on the question now under consideration, as to what his rights are, but whatever the court conceives them to be, it will protect as quickly and as fully as though it were property; and though this is done in one sense for the benefit of the state, the right of the officer is worthy of some consideration. * * *"

And further in the same opinion it was said:

"Therefore, it is the duty of courts to protect a citizen in the enjoyment of every right which he acquires under statutory or constitutional authority, as quickly and as fully as they would his property. * * *"

It is therefore incumbent on this court to adopt a rule which will respect these rights and at the same time fully protect the rights of the public. We must and shall fully protect the rights of the public in the removal of public officers who merit removal, and we wholly acquiesce in the right of the public to the suspension of accused officials pending trial when that suspension is justified and is obtained in an orderly and valid manner.

We, therefore, conclude that in such an action as this the district court has the power to suspend an accused official pending trial; that the trial court has the power to so suspend as quickly and promptly as any special circumstances should require; that such power should be exercised, however, only after notice to the accused official and a reasonable opportunity to be present and be heard if he desires, in opposition to the application to suspend. We conclude that the circumstances surrounding the entering of these orders of suspension indicate that the action here taken was, in the meaning of the law, an arbitrary action, and amounted to an unauthorized application of judicial force, though in an action otherwise cognizable by the trial court.

The respondent here contends that the order of suspension of July 4th contains a sufficient statement of findings and conclusions to constitute a proper foundation for the court's action, and that the error, if any, in proceeding without notice and in the manner the trial court did proceed cannot be corrected or attacked by an action in this court in prohibition.

This contention of the respondent is refuted, and our conclusion, as above stated, is required and justified, by former decisions of this court.

We should bear in mind that our statute grants no express power to suspend an accused official in such a case. That power, wherever it exists at all, exists by implication as an incident to the power of removal after conviction. There is a division of authorities on the point, some holding to the view that such power is implied, and others holding to the view that, since the power to suspend was not expressly given, it cannot be implied.

This court is committed to the view that the power to suspend does exist by implication. In Maben v. Rosser, 24 Okla. 588, 103 P. 674, after noticing the division of authorities and after observing that the two rules appear to be equally supported by the authorities, the rule was there adopted that the power to suspend was granted or exists by implication. However, in that case a reasonable notice was given and the accused official was present and took part in the hearing, which resulted in his suspension. While the court did not there express the view that such a hearing was essential, that conclusion was clearly implied, as it was there said, in effect, that this power to suspend should not be exercised arbitrarily, but only when strong reason exists therefor and after a review of the circumstances surrounding the case and other reasons offered why the power should be exercised. And it was further stated that the court will exercise or refuse to exercise such power in each case as in his sound discretion the facts and circumstances peculiar to that case require. Thus, in effect, this court gave its sanction and approval to the holding of a hearing on a suspension matter, upon the appearance of the accused official, and gave its sanction to the suspension of the accused official, when the facts and circumstances surrounding the case could be presented to

the trial court in an orderly manner, and when there was something presented to him upon which his discretion could act, and when his discretion as applied thereto should dictate that strong reasons existed for the suspension. While the court there recognized the power to suspend, there is nothing in that opinion indicating that such power would be exercised in an authorized manner, by the immediate suspension on filing of the accusation, and the subsequent suspension without notice or any character of hearing, as was done by the trial court here on July 2d and July 4th.

In Lattimore v. Vernor, 142 Okla. 105, 288 P. 463, in a prohibition action, this court considered an order made by the district court superseding the county attorney or appointing a substitute county attorney to appear before the grand jury. The district court had the power in a proper case to appoint a suitable person as substitute county attorney, and the statute did not specifically require any notice or hearing prior to such action and such order by the district court. Nevertheless, this court held in effect that such action was unwarranted until the trial court had conducted a hearing and made its finding of necessary facts, and incorporated a statement thereof in its journal entry, as the basis and foundation for the exercise of its power to appoint some one to act as county attorney. The action of the court there in proceeding overpromptly and without notice of hearing was held to be, in the meaning of the law, an arbitrary action, and it was fully corrected by prohibition in that case. The order of the trial court in that case contained general conclusions as to the disqualification of the county attorney, and in a similar manner the order of suspension of July 4th in this case contained some statement of general conclusions justifying suspension of these officials. But nothing more is shown in the order here attacked, and the former decision in Lattimore v. Vernor fully justifies our conclusion here.

The rule of the Lattimore Case was expressly followed in Mifflin v. Arnett, 153 Okla. 47, 4 P.2d 732, and was cited with approval in State Bar v. McGhee, 148 Okla. 219, 298 P. 580.

Thus, it is held that, although a trial court may have power under proper circumstances to take a particular action, the taking of such action without notice or hearing or finding of the facts justifying it may constitute an arbitrary action and an unauthorized application of judicial force, and may properly be prohibited by this court.

In the Lattimore Case, supra, this court held in paragraph 1 of the syllabus as follows:

"'Prohibition' is an extraordinary judicial writ issuing out of a court of superior jurisdiction to keep inferior courts and tribunals within the limits and bounds prescribed for them by law, and its use in proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined to the exercise of those powers with which it has been by law intrusted."

This opinion and other decisions of this court, in many cases where prohibition has been granted to arrest improper action, or orders, or their enforcement in trial courts, constitute a complete answer to the contention of respondent here that a remedy by prohibition should not be granted to these petitioners. See Baker v. Carter, 180 Okla. 71, 68 P.2d 85; Payne v. Speakman, 96 Okla. 170, 221 P. 9; State v. District Court, 122 Okla. 69, 250 P. 1023; Gilmer Oil Co. v. Ross, 178 Okla. 125, 62 P.2d 76; State ex rel. Tankersley v. District Court, 168 Okla. 426, 33 P.2d 632; Redcorn v. District Court, 141 Okla. 237, 284 P 1113; Fleet v. Hooker, 178 Okla. 640, 63 P.2d 988; Frensley v. Frensley, 173 Okla. 321, 49 P.2d 731; Atchison, T. & S. F. Ry. Co. v. Love, 29 Okla. 738, 119 P. 207; Martin v. O'Reilly, 81 Okla. 261, 200 P. 687; Yarhola v. Duling, 86 Okla. 171, 207 P. 293; Davis v. District Court, 129 Okla. 236, 264 P. 176; State ex rel. Spigner v. Superior Court of Okmulgee County, 175 Okla. 632, 54 P.2d 317; Moore v. Vincent, 174 Okla. 339, 50 P.2d 388, and Colby v. Jacobs, 179 Okla. 170, 64 P.2d 881.

See, also, these decisions from other jurisdictions, viz.: Burke v. Knox (Utah) 206 P. 711; Parker v. Morgan (Utah) 160 P. 764; Peters v. Buckner (Mo.) 17 A. L. R. 543, 232 S. W. 1024; State ex rel. McAllister v. Slate, Judge, (Mo.) 8 A. L. R. 1226, 214 S. W. 85; Edson v. Superior Court (Cal. App.) 277 P. 194, and Ferguson v. Superior Court (Cal. App.) 147 P. 603.

These adjudications thoroughly justify the petitioners here in their resort to prohibition as a proper remedy, and we consider the former decisions of this court binding upon us in our determination here.

From these conclusions it would follow that the petitioners are entitled to pro-

hibit the enforcement of their suspension under the order of July 2d and the order of July 4th. However, it would further follow that upon notice to these accused officials, and reasonable opportunity to be present, an application for their suspension could yet be presented in open court in an orderly manner, and if it is made to appear to the court that suspension of any or either of them is necessary and proper, after hearing what may be offered supporting the application and what may be presented in opposition to suspension, then all or any of them could be suspended. The facts here justify a writ prohibiting the enforcement of an order of suspension, unless and until such order shall issue in such an orderly manner, thus we fully recognize and preserve the right to have suspension of officials in the public interest and at the same time protect the right of the private person to hold his office until he is suspended by orderly judicial action.

It is therefore ordered that the respondent, district judge, be prohibited from any enforcement of the suspension orders issued on July 2d and July 4th, 1938, and from in any manner suspending these accused officials unless and until the official sought to be suspended shall have reasonable notice and opportunity to be present at the hearing on application to suspend, and to be heard if he so desires in opposition to his suspension.

OSBORN, C. J., and RILEY, CORN, and GIBSON, JJ., concur. RILEY, J., expressing further special views. HURST, J., dissents. BAYLESS, V. C. J., and PHELPS and DAVISON, JJ., absent.

RILEY, J. (concurring.) Herein a writ of prohibition is sought to restrain the respondent judge from enforcing an order of suspension, issued preliminary and incidental to a pending action directed toward the removal of the petitioners from office as members of the school board of Oklahoma City.

Heretofore, this court issued an alternative writ of prohibition directing the respondent judge to adduce evidence, after a proper notice, to justify the orders of suspension, or to refrain from enforcement of the orders or to show cause why the writ should not be made permanent. The respondent judge elected to show cause and now contends that the orders entered on July 4, 1938, are valid.

It is agreed that the statutes applicable are sections 3447 to and including 3459, O.

S. 1931. In substance these statutes provide causes for removal, require a written accusation to be served upon "the defendant," and a written notice of not less than five days for the appearance and answer to the charges. These are conditions precedent to removal. The method of trial is the same manner as the trial of an indictment for a misdemeanor. Section 3457, Id. The burden is on the state of establishing the allegations of the accusation beyond a reasonable doubt. Myers v. State, 137 Okla. 272, 278 P. 1106.

There is no applicable statutory provision vesting power of suspension pending the action for removal; however, in Maben v. Rosser, 24 Okla. 588, 103 P. 674, contrary to the majority rule prevailing in American jurisprudence (see Throop on Public Officers, sec. 404), we held that the greater power to remove carried with it as an incident the lesser power to suspend pending the action for removal. Notwithstanding strong reasons to the contrary, such as that expulsion creates a vacancy in office, suspension merely silences the incumbent safeguarding to him his salary, thus leaving the government handicapped with an office and officer and no vacancy and yet none to discharge the duties necessary to execution of the functions of government; while, on the other hand, exercise of the power of removal brings into being a new officer by appointment or election to exercise the functions of the office; therefore, it may be concluded that the lesser power of suspension is not in this sense a temporary removal, consequently is not precisely derivative of or incidental to the greater power; yet for equally strong reasons we adhere to the early rule established in this state.

Adhering to the rule that the power of removal carries with it power to suspend from offices, what are the prerequisites for the exercise of the derived power? "This power * * * is not a power that should be exercised arbitrarily, and the courts unquestionably will exercise it only when strong reason exists therefor. * * * The court will exercise or refuse to exercise it in each case, as in his sound discretion the facts and circumstances peculiar to the case require." Maben v. Rosser, supra.

How are facts and circumstances to be found upon which to base a judicial discretion? The answer is obvious. At a hearing. And as we are committed to the rule that the power of suspension is derived of the power of removal, can it be

logically said that prerequisites of the exercise of the removal power prescribed by statute, to wit, written accusation, notice, and an opportunity to be heard, are to be cast aside in the exercise of the diminished, derived, incidental power? I think not.

While there is no property right in an office, as we understand it, yet there is speedy and certain remedy afforded for every wrong and for every injury to person or reputation, and right and justice shall be administered without delay or prejudice. Section 6, art. 2, Constitution of Oklahoma.

In South Carolina it is held that suspension is a serious condemnation, and the statute providing for removal cannot by implication encompass such power of condemnation without notice and an opportunity to be heard. This for the reason that the intention to preserve the right to be heard is implied in all legislation unless it is expressly denied. MacDowell v. Burnett, 92 S. C. 469, 75 S. E. 873. In New Mexico it is held that the consequences of suspension and removal of the officer are highly penal in character and he should be protected against loose and irregular procedure, and among the safeguards are notice and an opportunity to be heard. "This," that court held, "is the situation in regard to this suspension proceeding, and the judgment must be held to be void." There the writ issued. State ex rel. Delgado v. Leahy, 30 N. M. 221, 231 P. 197. A prerogative of the Crown by letters patent prevails in foreign countries whereby suspension from office may be had through the ipsi dixit of the ruling power notwithstanding foreign recognition of property right in office and the grant of it for life. Not so in America. No American case can be found, says Mr. Throop in his estimable work on Public Officers, which recognizes such a prerogative as existing either in the chief executive in the state or even in the President of the United States. Section 402, Id. Throop on Public Officers.

Ours is a theorem of government, particularly pertaining to the judicial department, which hears before it condemns, considers innocent until proven guilty, proceeds upon inquiry and attaches no significance whatever, not even recognizing as circumstances allegations contained in an accusation, for circumstances are logical conclusions derived from facts, and facts judicially established are derived from evidence adduced in a public hearing; a public hearing contemplates the right of cross-examination, privilege of process, contradiction by rebuttal and right of representation to resist the charges prepared by the officer or bodies prototypes in America of officers of the Crown. The Crown, worn by the King, who can do no wrong and being so regarded as infallible, when his representatives present accusations against a subject, contrarywise to our theorem, the subject is presumed guilty until proven innocent.

In the instant case there are serious charges if properly established, assuming there is sustaining evidence, the petitioners or some one of them may be removed from office and otherwise required to atone for wrongdoing. Far better that a hundred citizens or even office holders, though guilty, go free than that an innocent be found guilty.

How easy it would have been to proceed to final decision, protecting the public interest during the interim and safeguarding the constitutional rights of the accused, had the respondents adduced some proof, as in the preliminary hearing on information, as suggested in the alternative writ heretofore issued by this court. By such an election there would have been no delay.

The writ of prohibition will lie to prevent an abuse of judicial power in a matter otherwise cognizable by the inferior court. Sterling Refining Co. v. Walker, 165 Okla 45, 25 P.2d 312. Herein no opportunity to be heard was afforded the defendant petitioners prior to the issuance of the orders of suspension. The writ should be made permanent and the trial court refrain from enforcement of the orders of suspension until reasonable notice is afforded the defendants, say 24 hours, together with an opportunity to be heard. A hearing contemplates privilege of cross-examination, process for the attendance of witnesses, the production of documents and papers, and the defendants' right of representation by counsel of their choice.

A strict compliance with the statute is a prerequisite of jurisdiction in this class of cases. Barnett v. Hepburn, 121 Okla. 268, 249 P. 921. Some significance is sought to be attached to a discretion vested in the trial judge by virtue of which he is said to have ordered these suspensions. The most odious and dangerous of all laws would be these depending on the discretion of judges. "The discretion of a judge is the law of tyrants," said Lord Camden. "It is always unknown; it is different in different men. It is casual, and depends on constitution, temper, and passion. At best it

is often caprice. In the worst it is every vice, folly, and passion to which human nature can be liable."

"Courts are mere instruments of the law and can will nothing," said Marshall. "When they are said to exercise a discretion, it is a mere legal discretion; a discretion to be exercised in discerning the course prescribed by law, and when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the Legislature, or, in other words, to the will of the law." Osborn v. Bank of the United States, 22 U. S. 738, 6 L. Ed. 204.

Discretion is not a synonym for arbitrary will or inconsiderate action. It is a discernment of what is right and proper, guided by the law as made applicable by facts properly adduced.

HURST, J. (dissenting). I am of the opinion that the district court had jurisdiction to suspend the petitioners without giving them notice and a hearing. The statutes and decisions of this court are silent on the subject, but text writers and courts of other states, where the question has been determined, sustain the right. In 22 R. C. L. 564, it is said that "notice and hearing are not prerequisite to suspension unless required by statute." The rule is stated in 46 C. J. 982, that "the power to suspend may, in the absence of a constitutional or statutory provision to the contrary, be exercised without notice to the person suspended."

The case of Griner v. Thomas (1907, Tex.) 104 S. W. 1058, construing a statute that authorized suspension but was silent as to notice and a hearing, held that notice and a hearing are not necessary. The cases of State v. Police Commissioners (1884) 16 Mo. App. 48, and Chase v. City Council of Providence (1914, R. I.) 89 Atl. 1066, sustained suspension orders where no notice was given. Petitioners have cited no authorities, and I have found none, contrary to the foregoing.

It must be borne in mind that suspension is not the same as removal. Removal contemplates the permanent separation of the officer from the office, and before it can be accomplished, the accused officer must be given the right to face his accusers before a jury, and the removal order cannot be made until he has been found guilty. On the other hand, suspension merely ties the hands of the officer, for the time being, so that he cannot use the power or influence of his office "to seriously embarrass his triers in their approaches to the ends of justice." Maben v. Rosser (1909) 24 Okla. 588, 103 P. 674. It does not determine the guilt or innocence of the accused.

Prohibition is not a writ of right, but one of sound discretion, and should be granted or refused according to the circumstances of each case. Kedney v. Hooker (1930) 144 Okla. 148, 289 P. 1108. It is an extraordinary remedy, and "should be used with caution and forbearance, for the furtherance of justice." Hirsh v. Twyford (1913) 40 Okla. 220, 139 P. 313. It should issue only where the absence or excess of jurisdiction is clear. 50 C. J. 657. Can it be clear that the district court in the instant case acted in the absence or excess of jurisdiction in making the suspension orders complained of, when the authorities are practically, if not entirely, unanimous in holding that he did not?

We are free to follow the rule adopted in the other jurisdictions, and to commit to the discretion of the trial judges the question of when the public interest requires an immediate suspension, without notice, and when it is safe to give notice and an opportunity to be heard before it is decided whether suspension shall be ordered. The trial judges should, and can be expected to, exercise that discretion with wisdom and proper regard for the rights of the accused officer and the superior rights of the public. I think this is the rule we should adopt, rather than promulgate a new rule, peculiar to Oklahoma, that may, in many cases, be detrimental to the public interest.

Here a grand jury has inquired into the official conduct of the petitioners. They have heard evidence and found therefrom that petitioners have been guilty of official misconduct, and have filed removal charges against them. They have thought the circumstances such that petitioners should be suspended pending the trial of the accusations, and have so recommended. The county attorney and Assistant Attorney General, who presented the evidence to the grand jury, recommended the suspension. The district judge examined the charges and followed the recommendations by entering the orders of suspension. There are no emoluments attached to the office. Petitioners have no property right in the office. They are entitled to an early trial, and will, no doubt, be given one. In the meantime,

I am of the opinion that no great wrong will be done the petitioners to keep them under suspension, and it may be very much in the public interest to do so. This view was evidently entertained by the grand jury and district judge, who are more familiar with the circumstances than we are. I think it would be in keeping with our duty to exercise caution and forbearance and a sound discretion to refuse to issue the writ.

For the foregoing reasons. I dissent.