STATE of Oklahoma ex rel. Mac Q. WIL-
LIAMSON, Attorney General of Oklahoma,
and Mac Q. Williamson, Bob Chambers
and Earl Ward, Trustees of the W. A.
Graham Public Improvements Trust Es-
tate, and Mac Q. Williamson and Earl
Ward, Petitioners,

v.

Josh J. EVANS, Judge of the District Court
of Mayes County, Oklahoma, W. T. Gool-
dy and C. W. Trout, Respondents.

No. 37889.

Supreme Court of Oklahoma.

Dec. 4, 1957.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., Wallace, Wallace & Owens, Miami, for petitioners.

H. Tom Kight, Jr., Claremore, George H. Jennings Sapulpa, for respondents.

CORN, Vice Chief Justice.

This matter presents another chapter in the involved affairs of the estate of W. A. Graham, deceased. Considered herein is an application for this court to assume original jurisdiction and to grant a writ of prohibition against the respondent district judge, and parties named by such judge as trustees of the W. A. Graham Public Improvements Trust Estate. In the interest of brevity no effort shall be expended in recitation of the entire factual background from which evolved the circumstances upon which this application is based. The basis of this case is founded upon the establishment of the public trust estate, and a satisfactory understanding of the factual background may be derived from examination of our prior decisions in State ex rel. Williamson v. Longmire, Okl., 281 P.2d 949; Mitchell v. Williamson, Okl., 304 P.2d 314.

After the latter decision the bulk of decedent's residuary estate was set over to the statutory trustees, who undertook preservation and management of the assets pending final disposition according to terms of the trust. Under the statutory authority granted the trustees (60 O.S.Supp.1955 § 381 et seq.) and particularly under Sec. 395, the trustees considered it their sole authority to determine the various public improve-

ments to be made within the terms of the trust. Eventually the trustees developed a plan for constructing the following public improvements in the discharge of their trusteeship:

"1. W. A. Graham Memorial Chapel, on the grounds of the Whitaker State Orphan Home, at Pryor, Oklahoma.

"2. Mayes County Agricultural Center on the grounds of the Mayes County Free Fair, near Pryor.

"3. Remodeling and renovating the City Hall of Pryor.

"4. Public Library for Pryor.

"5. City Auditorium in Pryor.

"6. Completely remodeling and renovating the Mayes County Courthouse.

"7. In addition, some $450,000.00 has been tentatively allocated for projects for the benefit of communities outside of the city of Pryor in Mayes County. Such projects as community buildings, sewer systems, water systems, public meeting places and a school gymnasium are being considered."

To carry out the program architects were employed and plans made for these projects. However, the trustees saw fit in many instances to file applications for authority to proceed with respondent. In some instances approval was given, but in others the respondent took no action. On January 18, 1957 the trustees applied to the court for approval of the plans for the Agricultural Center, and on March 18, 1957 application also was made to approve final working drawings on the Memorial Chapel. Respondent took no action upon either application. Apparently in effort to discharge their duties the trustees, on May 29, 1957, filed what was denominated an "Interim Report" with respondent, setting forth that the trustees thereafter intended to follow the statutes in performing their duties, but would keep respondent advised of matters by furnishing him a copy of the minutes of the trustees' meetings.

Following this plan the trustees had scheduled receiving of bids and letting of construction contracts for the Memorial Chapel and Agricultural Center on July 2–3, 1957. On June 7th, following receipt of the Interim Report, respondent ordered a hearing in the matter, which was continued until July 1, 1957. After a prolonged statement and discussion which, in respect to many matters relating to trust affairs, charged the trustees with bad faith in handling the trust estate, respondent made numerous orders disapproving, or taking under advisement, the matters of vouchers regularly issued by the trustees, particularly as respected handling of various parcels of real estate owned by the trust and on which the trustees had paid for repairs or charges for insurance. Respondent further disallowed claims for expenses relative to the proposed Memorial Chapel and expressly disapproved the trustees' decision to erect such edifice, disallowed and disapproved receipt of bids and letting of contracts for construction both of the chapel and agricultural center. Respondent also ordered removal of the statutory trustees, Williamson and Ward, enjoined them and the remaining trustee from signing vouchers, and announced his intention to appoint "successor trustees." An order entered thereafter appointed the named respondents as such trustees.

July 3, 1957 petitioners applied to this court for writ of prohibition, setting forth that: Petitioners as trustees, brought this action pursuant to direction of the Governor; from inception of the trust respondent had attempted to exercise direction and control of the trustees in determining the public improvements to be made; determination of public improvements by respondent was unauthorized, same being the trustees' sole responsibility under provisions of the statute, 60 O.S.Supp.1955, § 395; to avoid conflict with respondent trustees had filed certain applications with respondent and, though some had been approved, applications for construction of

the chapel and agricultural center had not been acted upon; respondent's failure to act necessarily resulted in delay of other projects and for this reason petitioners had filed the interim report; on June 7th respondent had entered an order requiring petitioners to appear with counsel, auditors and architects on June 7, 1957 to report on the general affairs of the Public Improvements Trust, but impossibility of appearing on short notice required the matter to be continued but no other order or notice advising trustees of the nature of hearing was entered; on July 1st respondent had conducted a hearing and requested documentary information which trustees had furnished the following day; after introduction of exhibits and extensive questioning and remarks by respondent the following orders were entered:

"Disapproving and disallowing the construction of a Memorial Chapel to be built on the grounds of the Whitaker State Orphan Home as a living memorial to the memory of W. A. Graham.

"Plans for this Chapel had been approved by the Governor, the State Board of Affairs and the Superintendent of said home. Bids for the construction of said chapel were to have been received on July 2, 1957, at 11:00 o'clock a.m. A contract for the construction of said Chapel would have been awarded shortly thereafter but for this order of the District Judge."

Petitioners alleged such purported orders to be contrary to law, and to constitute an excessive, arbitrary and illegal abuse of judicial authority, against which petitioners were without an adequate remedy at law because: An attempted appeal from such of the orders as are appealable would result in extensive delay and delay liquidation of the trust estate and construction of the public improvements; threatened appointment of new trustees is not appealable and if not prohibited would result in unauthorized persons controlling the trust estate. Alternative writ of prohibition issued, enjoining respondent and

the newly appointed trustees from further action. Motions to dissolve the alternative writ and the application to assume jurisdiction, were denied. On July 23, 1957 an order was made directing petitioners (statutory trustees) to pay salaries, utility bills and provide necessary emergency repairs to property from trust estate funds.

The matter is presented here by the pleadings and extensive briefs wherein numerous questions are raised by both sides in support of their respective positions. The basis of the argument relied upon by respondents is that the court, in the exercise of equitable jurisdiction, was vested with the duty and the power to safeguard the trust estate, and to accomplish this the court had authority to inquire into whether the trustees' actions were proper, fair and reasonable. We deem it unnecessary at this time to consider separately the contentions urged; inasmuch as consideration of two questions are determinative of the basic question, the propriety of the application for issuance of the extraordinary writ sought herein.

As noted, respondent entered an order (June 7, 1957) directing the trustees to appear that day (2:30 P.M.) "* *. * to report on general affairs pertaining to the W. A. Graham Public Improvements Trust, and to have with them their counsel, general auditors and architects." Evidently only the apparent impossibility of the trustees being able to comply with the order provided grounds for continuance.

The hearing eventually consumed two days time. The discursive summation disclosed that respondent found: (1) the trustees' plan to erect a memorial chapel was an illegal expenditure of trust funds; (2) approval of the proposed agricultural center was reserved, but the trustees' previous acts in this connection should be disapproved for trustees' failure to secure the court's approval; (3) certain actions of the trustees were disapproved as illegal delegation of their authority; (this finding was directed at such matters as the trustees' authorization to the manager

of the real estate to effect temporary emergency repairs to property without first securing approval); (4) the trustees had made illegal expenditures, such as hiring appraisers for the real property and in agreeing to a division of Soil Bank payments with one of the farm tenants.

Based upon such matters as just mentioned, which rested entirely upon respondent's interpretation of factual matters disclosed from limited testimony and examination of the trustees' minutes and reports, respondent ordered removal of two trustees. One trustee (Chambers) was retained on the ground he had not been in agreement with the others in regard to certain matters, including the letting of contracts for construction of planned improvements. At the hearing respondent indicated an intention to appoint successor trustees, and such appointments later were made.

The rule in this state is that upon application for prohibition of an inferior court, the only inquiries permitted are whether such court is exercising judicial power not granted by law, or is attempting to make an unauthorized application of judicial force, and this court will not consider the merits of the controversy. Lattimore v. Vernor, 142 Okl. 105, 288 P. 463; Rose v. Arnold, 183 Okl. 286, 82 P.2d 293. Application of the rule to the present situation invokes consideration of two matters. The first of these is whether respondent, in ordering removal of two trustees, attempted to exercise judicial power not authorized by law.

A portion of the statutes in question, 60 O.S.Supp. § 394, in part provides:

"When any unconditional gift, testamentary or otherwise, of any property to the State of Oklahoma and a county therein and a city or town within such county shall have been accepted, upon behalf of all such governmental units, as provided for in Sections 3, 10 and 13 hereof, the Attorney General of the State of Oklahoma, and the County Treasurer of such County, and the presiding officer of the governing board of such city or town, at the time of the first distribution under such gifts, if testamentary, or at the time of such acceptance of such gifts, if other than a testamentary gift, shall be co-trustees and the official representatives and agents of their respective governmental units for all property or moneys involved in, and derived from, such gifts, for the use and benefit of such governmental units, for the purposes specified in Section 12 hereof; and as such, shall be authorized to execute and deliver any receipts required in connection therewith.

"They shall continue as such trustees until the trust estate, resulting hereunder, shall have been fully administered, irrespective of their continuance in such public offices; provided, that in event of the death, resignation, disqualification or incapacity of any trustee before such trust estate shall have been fully administered, the person then holding the public office corresponding to that held by such deceased or resigned trustee at the time he became trustee hereunder, or, in event such death, disqualification, resignation or incapacity occurs while such trustee still holds such public office, the person elected or appointed to fill the vacancy in such public office, or the temporary or other successor thereto shall become and be his successor as such trustee."

By general definition a public officer is "* * * such an officer as is required by law to be elected or appointed, who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by law." 42 Am.Jur., Public Officers, Sec. 2. And, in Sparks v. Board of Library Trustees, etc., 197 Okl. 132, 169 P.2d 201, 203, the following definition appears:

"'An officer is one who is invested with some portion of the functions of the government to be exercised

for the public benefit.' Black's Law Dictionary (3d Ed.) page 1286."

See also annotations 53 A.L.R. 595 and 93 A.L.R. 333.

■ Consideration of the wording of the quoted portion of the statute, supra, making the enumerated persons "the official representatives and agents of their respective governmental units * * *", most clearly discloses the legislative intention to constitute the statutory trustees public officers for the purposes set forth in the entire act. 60 O.S.Supp. §§ 381-397.

■ The rule is that the statutory manner for removing from office public officers not subject to impeachment is exclusive. State ex rel. Murray v. Bozarth, 167 Okl. 321, 29 P.2d 579. Our statutes, 22 O.S. 1951, § 1181 et seq., set forth the causes for removal from office, and further carefully define the method and procedure to be followed in effecting such removal. In the case of Schaeffer v. Jackson, 106 Okl. 194; 225 P. 961, the third paragraph of the syllabus states:

"Where a statute provides that an officer may be removed for certain specified causes, the order of removal must be based upon someone or all of such causes, and cannot be made for other causes."

More recently we considered the question of removal of a public officer from office in Loper v. Shumate, Okl., 282 P.2d 239. Therein it was pointed out again that the statutes for removal from office are exclusive, *and that compliance therewith is essential to establish the court's jurisdiction.*

■ The record herein not only reflects entire absence of effort to proceed in accordance with the statutes, but affirmatively discloses that a hearing, ordered for the ostensible purpose of receiving a general report upon the affairs of the trust estate, became a trial without a jury wherein the accused neither were apprised of the charges against them, nor afforded opportunity to call witnesses and resort to cross-examination. We necessarily conclude respondent was attempting to ex-

ercise judicial power not granted by law in purporting to remove the named trustees from a public office. In such instances prohibition will not be withheld because concurrent remedies exist, when it does not appear such remedies are equally adequate and convenient. State ex rel. Oklahoma Natural Gas Co. v. Hughes, 204 Okl. 134, 227 P.2d 666. The obvious necessity for constant supervision and control of the trust estate by the trustees demonstrates the inadequacy of concurrent remedies.

The necessity for settling issues raised by the application for the writ of prohibition provokes consideration of a related question. The record evidence, and the pleadings filed in this court, reflect that the principal factor which gave rise to this action arose from a conflict in thought and interest of the parties concerning respondent's authority to inquire into and approve or disapprove the trustees' plans for public improvements, to be aided or established out of the funds of the trust estate. Thus the question simply is whether respondent had any authority to control the trustees' discretion in determining what public improvements should be made.

It was and is respondent's position that, as a court of equity, respondent was vested with authority to determine whether expenditures for public improvements proposed by the trustees were authorized, and also whether proper. The reasoning and argument supporting respondent's position is that a court of equity has inherent authority and control over trust estates under the general statutes governing trusts, and this inherent power provided authority to remove the trustees. The authority relied upon in support of this argument is from Stallard v. Johnson, 189 Okl. 376, 116 P.2d 965, and similar cases, to the effect that a court's equitable jurisdiction provides the power and duty to safeguard the interests of the cestui que trust, and to see that the discretion vested in the trustees is fairly and reasonably exercised. Although a proper statement of the law, the argument overlooks the other consideration which must control in this instance. Childers v.

Breese, 202 Okl. 377, 213 P.2d 565; See also Cameron v. White, 128 Okl. 251, 262 P. 664.

In the first instance it must be noted that the present case presents a different situation from that observed in Stallard v. Johnson, supra. Therein the issue concerned a testamentary trust whereas, here the problem concerns a statutory, public trust. The duties, powers, and extent of the trustees' authority is specifically conferred upon the trustees in positive language. Analysis of the statute discloses that under Sec. 394 above quoted in part, the officers who shall serve as trustees are set forth. And the manner in which they shall be replaced is provided for in the event of disability to serve for numerous reasons. This section further provides; that the trustees may not sell any property without prior approval of the district judge, but as distinguished from expending the same for public improvements as authorized.

The succeeding section, 395, in substance provides:

1. The co-trustees of a trust estate resulting hereunder are hereby authorized and empowered

a. to manage such trust estate and all money and property belonging thereto;

b. to rent or lease any of the real property for the purpose of exploring for and extracting any minerals, including oil and gas, as well as for other purposes;

c. and to sell or otherwise convert any of the property into cash;

d. in the manner, for the price, and terms and conditions deemed to be for the best interest of the trust estate;

e. and, for such purposes, to execute and deliver such written instruments as may be required.

2. Such co-trustees are also authorized and empowered

a. to use any money and property of the trust estate for the construction of public improvements in the town or city, or in the county, designated in such gift;

b. for the purpose of sites and rights-of-way for public improvements in such town or city, or in such county;

c. and for repairs and additions to existing public improvements within such city or town, or within such county;

d. and, where necessary to the use of funds from other sources for the construction of public improvements upon any real property in such county belonging to such trust estate, may, in their discretion, convey the title to such real property to any one of the governmental units having a beneficial interest in such trust estate, for such public improvement purposes, without further consideration.

3. a. Such co-trustees shall be the exclusive judges of the public improvements to be made or aided from such trust estate.

b. They are also authorized to enter into any contracts including construction contracts, which they deem to be proper in the performance of their duties;

c. to employ and fix the compensation for such help and assistance, professional or otherwise, as they deem necessary to carry out the policies determined by them hereunder;

d. to pay the same from the trust fund account provided for herein;

e. such co-trustees may be sued, and, in their discretion, may sue, in any matters relating to such trust estate or growing out of the administration thereof, and may employ attorneys in connection with any such matters, but shall not personally be civilly liable for damages or attorneys' fees except upon criminal or culpable misconduct.

f. Any official act or action by such co-trustees shall require the joinder of all three trustees.

Clearly the statute accomplishes two things; requires supervisory control by the district court in effectuating the sale of property under Sec. 394; (2) vests the specified public officers as trustees

with the entire discretion as to determination of what public improvements are to be created, or aided, by expenditure of funds belonging to the trust estate. The constitutional authority which invests the Legislature with power to enact legislation defining the nature and extent of the duties and authorities of the trustees of a special trust such as is here considered neither can be questioned, nor the propriety thereof inquired into under these circumstances. These statutory provisions are not susceptible of other interpretations. And, being a special act dealing with a particular subject and therein prescribing and regulating the terms and conditions of the subject matter, such statutes prevail over general statutes not referring to the particular subject matter. Parks v. Stith, 204 Okl. 625, 232 P.2d 614; Bank of Picher v. Morris, 157 Okl. 122, 11 P.2d 178.

In view of the matters discussed heretofore it is clear respondent attempted to exercise a judicial power not warranted by law. We held in paragraph 4 of the syllabus in Rose v. Arnold, 183 Okl. 286, 82 P.2d 293:

"When a district judge makes an unwarranted and therefore unauthorized or unlawful application of judicial power he may be and should be prohibited."

Having concluded that respondent was without authority to remove petitioners as trustees, and was not vested with the duty or authority under the plain language of the statutes, to disapprove the actions of the trustees performed or in process of performance by them, within the limits of their statutory authority, it is therefore ordered that the writ of prohibition sought is hereby granted.