OPINION — AG — ** PEANUT COMMISSION — "STATE AGENCY" — LEGAL REPRESENTATION ** (1) THE OKLAHOMA PEANUT GROWERS ASSOCIATION, CREATED PURSUANT TO 2 O.S. 1103 [2-1103] IS A NON GOVERNMENTAL, PRIVATE ORGANIZATION, WHICH IS NOT A STATE AGENCY. (2) THE OKLAHOMA PEANUT GROWERS ASSOCIATION AND/OR ITS MEMBERS, AS SUCH, ARE `NOT' ENTITLED TO THE LEGAL REPRESENTATION OF THE ATTORNEY GENERAL IN CIVIL ACTIONS, SINCE THAT ENTITY IS NOT AN AGENCY OF STATE GOVERNMENT. THE OKLAHOMA PEANUT COMMISSION, AS AN AGENCY OF STATE GOVERNMENT, IS ENTITLED TO THE LEGAL REPRESENTATION OF THE ATTORNEY GENERAL IN ACCORDANCE WITH THE PROVISIONS OF 74 O.S. 20F [74-20F] AND 51 O.S. 161.1 [51-161.1] (LEGAL COUNSEL, STATE AGENCY, EMPLOYEES, DIRECTOR) CITE: 2 O.S. 1101 [2-1101], 2 O.S. 1106 [2-1106], 2 O.S. 1103 [2-1103], 2 O.S. 1113 [2-1113], 51 O.S. 161.1 [51-161.1], 74 O.S. 20F [74-20F], OPINION NO. 81-282, OPINION NO. 84-189 (CATHY CLINTON DABNEY)
The Attorney General has received your request for an official opinion asking, in effect:
1. Is the Oklahoma Peanut Growers Association classified as a state agency?
2. If a liability suit is brought against members of the Oklahoma Peanut Commission and/or the Oklahoma Peanut Growers Association, would the Attorney General act as its/their attorney?
The Oklahoma Peanut Growers Association was created by statute in 1965, under provisions of the Oklahoma Peanut Act, 2 O.S. 1101 et seq. (1981). The portion of that statute relevant to the creation of the Oklahoma Peanut Growers Association follows:
There is hereby created the Oklahoma Peanut Growers Association composed of all peanut growers paying the assessment provided in Section 1108 of this title. 2 O.S. 1103 (1987).
The assessment section of 2 O.S. 1108 provides:
A. There is hereby levied an assessment of Two Dollars ($2.00) per net ton of peanuts on a farmer's stock basis marketed in Oklahoma. Such assessment shall be levied and assessed to the grower at the time of the sale, and shall be shown as a deduction by the first purchaser from the price paid in settlement to the grower; provided that within sixty (60) days after any sale the grower may upon submission of a written request therefore to the executive secretary obtain a refund in the amount of the assessment deducted by said first purchaser. 2 O.S. 1108 (1987).
Under this section of the Act, it is the Oklahoma Peanut Commission which receives the peanut assessments. Apart from these two sections, and a brief mention under 2 O.S. 1113 (1987), there is no other statutory authorization for delegation of powers to, imposition of duties upon, or any other mention of the Oklahoma Peanut Growers Association. The Association is merely an organization of private persons, consisting of all peanut growers who pay the assessment contemplated by the Oklahoma Peanut Act.
Your first question involves the issue of whether the Oklahoma Peanut Growers Association is a state agency. Whether any particular entity operates as an agency of the government, and in this instance, the state government, generally depends upon the purposes for which such agency is being established. As a general rule, however, the government, similar to other corporate bodies, acts through its officers, agents and employees. East Central Oklahoma Electric Cooperative, Inc. v. Oklahoma Gas and Electric Co., 505 P.2d 1324 (Okl. 1973). Consequently, in determining whether a particular body is governmental rather than private, it is instructive to inquire whether the officers of the organization should be considered public officers.
The distinction between a public officer and parties acting in private capacities is found in the Oklahoma case of State v. Sowards et al., 82 P.2d 324 (Okl.Cr. 1938), and expressed as follows:
Public offices are created for the purpose of effecting the ends for which government has been instituted, which are the protection, safety, prosperity, and happiness of the people; and not the profit, honor, or private interest of any one man, family, or class of men. 82 P.2d at 330.
Additionally, specific elements are required to exist in a public office. These include (1) that the specific position must be created or authorized by law, (2) that there must be certain definite duties imposed by law on the incumbent, and (3) that they must involve the exercise of some portion of the sovereign power. Oklahoma City v. Century Indemnity Co., 62 P.2d 94, 97 (Okl. 1936). See also, State v. Euans, 319 P.2d 1112 (Okl. 1957); Moore v. Panish, 652 P.2d 32 (Cal. 1982). The common element which must be present in order to establish the existence of a public office is the delegation of duties to that office which are sovereign in character.
Unlike the Oklahoma Peanut Commission, which has as its source of authority, 2 O.S. 1106 (1981), "Powers and Duties of Commission," the Oklahoma Peanut Growers Association has no grant of sovereign authority to conduct or transact business on behalf of the State. This grant or delegation of some sovereign function is essential to the creation of a governmental office. The absence of such a delegation indicates that the character of the Oklahoma Peanut Growers Association is private as opposed to governmental. It exists for the purpose of providing a framework within which its members may further the interests of peanut production. Such interests, in this case, are private as to the group of peanut growers involved.
As a private association, the Oklahoma Peanut Growers Association is free to adopt by-laws and rules under which it may govern itself, and the courts are reluctant to interfere with the internal affairs of private associations. See Mahan v. Agee, 652 P.2d 765 (Okl. 1982); Board of Regents of the Uniuersity of Oklahoma v. National Collegiate Athletic Association, 561 P.2d 499 (Okl. 1977); Oklahorna Association of Insurance Agents v. Hudson, 385 P.2d 453 (Okl. 1963). Since the actions of the association are purely private, the association is entitled, under state law, to operate lawfully, without unreasonable governmental interference.
Your second question asks whether the Attorney General would act as legal counsel to either the Oklahoma Peanut Commission or the Oklahoma Peanut Growers Association, in the event a liability suit is commenced against either of those entities. Title 74 O.S. 20f (1987) provides, in part:
A. In the event an action is brought against an employee, who for the purposes of this act shall be an elected or appointed state officer or employee of any state officer, institution, agency, board or commission of any branch of state government in any civil action or special proceedings in the courts of this state, or of the United States, by reason of any act done or omitted in good faith in the course of his employment, it is the duty of the Attorney General or staff attorney of such person's agency where the agency is authorized by law to be represented in court by a member of its own permanent legal staff, when requested in writing by such employee, to appear and defend the action or proceeding in his behalf. Such written request shall be made within fifteen (15) days after service of summons on the employee and a copy of the request shall be transmitted by the employee to the head of his agency and the Attorney General.
Also, 51 O.S. 161.1 (1987) provides:
When the state has a duty to defend any action pursuant to the provision of this act, it shall be the duty of the Attorney General to defend all such actions, unless an agency of the state is authorized by law to employ its own attorneys, in which case said attorneys may defend such actions against the agency or the agency may request that the Attorney General defend such actions. If such a request is made, the Attorney General shall defend any such action.
It is clear that, under these sections, the Attorney General is charged with the duty to defend a state employee in any civil action arising out of his or her good faith performance of a lawfully assigned task within the scope of his or her employment. This duty to defend, of course, extends only to a state employee or entity, and does not extend to a non-governmental entity such as the Oklahoma Peanut Growers Association and its members, as such. Because the Oklahoma Peanut Growers Association is not a state agency, the Attorney General is under no duty and is not authorized to offer defense services to that entity in the event a liability suit is brought against it.
By way of distinction, the Oklahoma Peanut Commission has been found to be a state agency in prior opinions of the Attorney General. See A.G. Opin. No. 84-189; and A.G. Opin. No. 81-282. As such, it is afforded representation in accordance with these statutory provisions. Whether or not any particular state employee is acting in "good faith" within the meaning of those statutory provisions is a question of fact and not the proper subject of an opinion of the Attorney General; however, assuming that your question implies the good faith performance of a state employee acting within the scope of his or her employment, the question, as it relates to the Oklahoma Peanut Commission, and/or its employees, must be answered in the affirmative.
It is, therefore, the official opinion of the Attorney General that
1. The Oklahoma Peanut Growers Association, created pursuant to 2 O.S. 1103 (1987), is a non-governmental, private organization which is not a state agency.
2. The Oklahoma Peanut Growers Association and/or its members, as such, are not entitled to the legal representation of the Attorney General in civil actions, since that entity is not an agency of state government. The Oklahoma Peanut Commission, as an agency of state government, is entitled to the legal representation of the Attorney General in accordance with the provisions of 74 O.S. 20f (1987) and 51 O.S. 161.1 (1987). (CATHY CLINTON DABNEY) (ksg)