Dear Representatives Mitchell
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. May a trustee of an emergency medical services district,established pursuant to Article X, Section 9C of the OklahomaConstitution, continue to exercise the powers of a trustee afterhis or her term of office has expired?
2. May the board of trustees of such an emergency medicalservices district subdivide or "red-line" the district intogeographic sub-districts for the purpose of identifying sourcesand localizing the amounts of ad valorem income the districtreceives, then arbitrarily use those categorical amounts toeffect differences in quality, or availability, or cost ofemergency medical care and transportation for individuals withinthe district?
 I.
¶ 1 Article X, Section 9C(a), the constitutional provision creating emergency medical service (EMS) districts and their boards of trustees, states as follows:
 Each district which is herein authorized, or established, shall have a board of trustees composed of not less than five members. Such trustees shall be chosen jointly by the board or boards of county commissioners, provided that such membership shall be composed of not less than one individual from each county or part thereof which is included in said district.
¶ 2 In regard to the term of office for individual trustees, subsection (a) further provides:
 Original members of the board of trustees shall hold office, as follows: At the first meeting of said board, board members shall draw lots to determine each trustee's original length of term in office. The number of lots to be provided shall be equal to the number of original members of the board, and lots shall be numbered sequentially from one through five, with lots in excess of the fifth lot being also numbered sequentially from one through five until all lots are numbered. Each original member or members added by an expansion area of the board shall hold office for the number of years indicated on his or her lot. Each year, as necessary, the board or boards of county commissioners shall appoint successors to such members of the board of trustees whose terms have expired, and such subsequent appointments shall be for terms of five (5) years.
(Emphasis added).
¶ 3 Although a trustee's term of office has expired, that trustee may continue to perform the duties of a trustee until the board of county commissioners appoints a successor. Oklahoma Constitution Article XXIII, Section 10 provides:
 Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed: Provided, That all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified.
(Emphasis added).
¶ 4 A public officer is defined as one who is "invested with some portion of the functions of the government to be exercised for the public benefit." State v. Evans, 319 P.2d 1112,1116-1117 (Okla. 1957). Here, a trustee is vested, by virtue of the Oklahoma Constitution, with the power and duty to carry out the objectives of Article X, Section 9C for the benefit of persons within an EMS district. Because a trustee fits the definition of a public officer for the purpose of Article XXIII, Section 10, that trustee has the power to continue to perform the duties of a trustee after his or her term of office has expired, but only until the board of county commissioners appoints a successor.
 II.
¶ 5 Your second question asks whether the board of trustees of an EMS district may divide that district into geographic subdivisions for the purpose of identifying sources and localizing the amounts of ad valorem income within the district so as to effect differences in the quality, availability or cost of emergency medical care and transportation within the district.
¶ 6 Article X, Section 9C specifically provides what powers and duties are conferred on an EMS district's board of trustees. Subsection (a) provides in pertinent part:
 Such board of trustees shall have the power and duty to promulgate and adopt such rules, procedures and contract provisions necessary to carry out the purposes and objectives of these provisions . . . The district board of trustees shall have the additional powers to hire a manager and appropriate personnel, contract, organize, maintain or otherwise operate the emergency medical services within said district and such additional powers as may be authorized by the Legislature.
¶ 7 Various subsections within Article X, Section 9C go on to specify other powers a board of trustees has, including the power to issue bonds, if approved by a majority vote at a special election for such purpose, pursuant to subsection (b); the power to levy a special annual ad valorem tax upon the property within the district to pay for the issuance of bonds, pursuant to subsection (d); the power to request that the county commissioners call a subsequent election to consider increasing the mill levy up to three mills, where the mill levy in the original election proclamation is less than three mills, pursuant to subsection (g); and the power to bring suits necessary to collect accounts owed and to sue and defend as necessary for the protection of the board of trustees, pursuant to subsection (i).
¶ 8 While Article X, Section 9C authorizes the board of trustees to perform various administrative functions necessary to carry out the purposes and objectives of an EMS district, as described above, it does not specifically grant the board of trustees the power or authority to formally or informally subdivide the district into geographic subdistricts, for any purpose.
¶ 9 Although Article X, Section 9C(a) does provide that the board of trustees may have additional powers, "as may be authorized by the Legislature," the Legislature has not attempted to confer the power to subdivide an EMS district on the board of trustees. As stated by the Oklahoma Supreme Court in City ofDuncan v. Bingham, 394 P.2d 456, 460 (Okla. 1964), "legislative silence, when it has authority to speak, may be considered as giving rise to an implication of legislative intent[.]" In the absence of any such legislation, it must be presumed that the board of trustees does not have any statutory power to subdivide a district.
¶ 10 Further, such subdividing or "red-lining" of a district would be in direct conflict with the procedure under Article X, Section 9C for creating or altering an EMS district. Subsection (a), which authorizes the formation of EMS districts, provides in pertinent part that:
 The board of county commissioners, or boards if more than one county is involved, may call a special election to determine whether or not an ambulance service district shall be formed. An election shall also be called by the board or boards involved upon petition signed by not less than ten percent of the registered voters of the area affected. Said area may embrace a county, a part thereof, or more than one county or parts thereof, and in the event the area covers only a part or parts of one or more counties, the area must follow school district boundary lines. All registered voters in such area shall be entitled to vote, as to whether or not such district shall be formed, and at the same time and in the same question authorize a tax levy not to exceed three mills for the purpose of providing funds for the purpose of support, organization, operation and maintenance of district ambulance services, known as emergency medical service districts and hereinafter referred to as "districts." If the formation of the district and the mill levy is approved by a majority of the votes cast, a special annual recurring ad valorem tax levy of not more than three mills on the dollar of the assessed valuation of all taxable property in the district shall be levied. The number of mills shall be set forth in the election proclamation, and may be increased in a later election, not to exceed a total levy of three mills. This special levy shall be in addition to all other levies and when authorized shall be made each fiscal year thereafter.
¶ 11 Once an EMS district is formed, the constitutional procedure for creating an expansion to that district is found in Article X, Section 9C(j), as follows:
 Any emergency medical service district may expand to include other counties or parts thereof, provided that an election is called by the county commissioners whose county or counties, or parts thereof, are to be added to in the established district; and provided further, that the county commissioners in the original district concur in the calling of said election. The proposed expansion area shall only be added to the original district if approved separately by a majority vote, by the voters in both the original district and in the expansion area, at an election called for that purpose. The county in which the expansion area is located shall have not less than one member on the board of trustees. Appropriate millage or other approved method of financial support shall be levied in the expansion area, when said area is added to the original district which millage shall be levied at the rate used to cover operational costs and outstanding bonded indebtedness as provided in Article X, Section 9C, (d) and (e).
In order for a district to be dissolved, Article X, Section 9C(k) provides in part:
 Any district may be dissolved, or the millage levy changed, by a majority vote of the registered voters voting at an election called for that purpose by the county commissioners of each county or part thereof included within the district[.]
¶ 12 Thus, the creation, expansion and dissolution of an EMS district is tightly controlled by the Oklahoma Constitution. Any attempt by the board of trustees of an EMS district to formally or informally subdivide the district, for whatever reason, would essentially result in the creation of smaller, separate EMS districts under the control of a single board of trustees. In order to carve out smaller districts within an existing EMS district, it is necessary to dissolve the existing district, as provided by Article X, Section 9C(k) and then create the desired smaller districts in accordance with Article X, Section 9C(a). Both subsections require the involvement of the board or boards of county commissioners and the ultimate approval of a majority of the registered voters within the affected district or areas. Because the subdivision of an EMS district contravenes the Article X, Section 9C procedure for creating or altering an EMS district, any act to effect such changes by the board of trustees would be unconstitutional. As such, the board of trustees of an EMS district may not geographically subdivide the district for any purpose, including the purpose of ultimately effecting differences in the quality, availability and cost of emergency medical care and transportation within the district.
¶ 13 It is, therefore, the official opinion of the AttorneyGeneral that:
1. A trustee of an emergency medical services district,established by Oklahoma Constitution Article X, Section 9C, maycontinue to perform the duties of a trustee after the expirationof his or her term, but only until the board of countycommissioners within the district appoints a successor.
 2. The board of trustees of an emergency medical servicesdistrict does not have the power to subdivide or "red-line" thedistrict into geographic subdistricts for the purpose oflocalizing the amounts of ad valorem income received so as toeffect differences in the quality, availability or cost ofemergency medical care and transportation within the district,for the reasons that (1) the board of trustees is not granted thepower to do so under Oklahoma Constitution Article X, section 9C,(2) the board of trustees has no statutory authority to do so,and (3) such action by the board of trustees would be in directconflict with the Article X, section 9C procedure for creation,expansion and dissolution of an emergency medical servicedistrict.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA W. CRAIG SUTTER ASSISTANT ATTORNEY GENERAL